THOMAS W. LAMONT et al., Individually and as the International Committee of Bankers on Mexico, Plaintiffs, *v.* TRAVELERS INSURANCE COMPANY et al., Defendants, and LOUIS S. OTTENHEIMER, Appellant.

THE GOVERNMENT OF THE UNITED STATES OF MEXICO, Appearing Specially, Respondent.

Argued June 1, 1939; decided November 14, 1939.

*Mark Hyman, Daniel W. Blumenthal, Frank R. Bruce* and *Maurice B. Blumenthal* for appellant.

*Jerome S. Hess, Irving I. Goldsmith* and *Frank Rashap* for respondent.

LEHMAN, J. The plaintiffs, constituting the " International Committee of Bankers on Mexico," have brought

this action, asking that the court permit them to render an account of their procedings, as such committee, and that the court instruct them as to the manner in which they should distribute moneys which they have received from the Government of the Mexican Republic and which they now hold. In their complaint the plaintiffs allege that the moneys have been paid to them pursuant to certain agreements, to which the Government of Mexico was a party, and that, by the terms of such agreements, " they are constituted trustees of the funds coming into the hands of the Committee pursuant to said agreements and are obligated to distribute such funds " to holders of obligations, issued or guaranteed by the Republic of Mexico, who have deposited their securities with the committee, pursuant to a deposit agreement. Claiming that the committee holds the moneys, received from the Government of the United States of Mexico, only as agents and that the moneys remain the property of the government, that government has appeared specially for the purpose of " asserting the sovereign immunity from suit of the United States of Mexico " and has moved for an order that the court refuse jurisdiction of the action. The motion was granted and an order dismissing the action was entered, and has been affirmed by the Appellate Division.

The pleadings and the affidavits filed upon the motion, show that in June, 1922, the Mexican Government was in default in the payment of interest on over $500,000,000 of bonds, issued at various times and containing varying terms and stipulations. These various issues of bonds may, it is said, be " generally classified as falling into three classes: a, the Secured Direct Debt; b, the Unsecured Direct Debt; and, c, the Railways Debt." A committee of foreign bankers, composed of representatives of banking firms or corporations which had distributed these issues of bonds to foreign investors, was formed for the purpose of negotiating, in behalf of the foreign bondholders who might deposit their bonds with the committee under a deposit agreement and plan prepared by the committee, an agreement with

the Government of Mexico for the adjustment and liquidation of its public debt. The committee successfully negotiated a satisfactory agreement with the government whereby the government promised to pay to the committee stipulated sums, to be distributed by the committee in accordance with a schedule which was made part of the agreement. In 1925 the committee, purporting to act under authority conferred by the depositing bondholders, agreed to a modification of the earlier agreements. The government has not paid the full amounts stipulated in the original or the modified agreement, but it has paid to the committee large sums of money and the committee now holds a fund of several million dollars which, concededly, it has received from the government for distribution among holders of government obligations deposited with the committee.

Conflicting claims have been made by holders of the three classes of obligations, and the Mexican Government has claimed that it is entitled to the return of the moneys it has paid. The complaint accordingly states: " * * * serious doubts have been raised as to whom and in what manner such funds should be distributed, it being questioned whether (a) all such funds should be distributed *pro rata* to depositors of bonds of the Secured Direct Debt, or (b) whether all such funds should be applied *pro tanto* in accordance with the schedule attached to the Deposit Agreement to depositors, or (c) whether the Mexican Government has an interest in all or part of said funds sufficient to require your plaintiffs, as such Committee, to deliver over all or part of such funds to such Government, or (d) whether distribution should be made in some other manner. In view of these circumstances, your plaintiffs, as such Committee, and as Trustees as aforesaid, feel it incumbent on them for their protection to apply to this Court for directions as to the persons to whom and the proportions in which they should pay and turn over such funds before making any distribution or partial distribution thereof whatsoever."

Because over two hundred and seventy-five thousand individual holders of securities have deposited their securities under the deposit agreements and because, according to the complaint, " the questions which are the subject of this action are of common and general interest to all depositors of securities falling within the three general classifications of securities under the aforesaid Agreements, namely, the Secured Direct Debt, the Unsecured Direct Debt, and the Railways Debt; that the rights under the aforesaid Agreements of depositors of securities of each of said three general classifications are equal and identical within the respective classification," the plaintiff has named Travelers Insurance Company of Hartford as a party defendant, as the representative of all the holders of deposited securities, hereinabove designated as the Secured Direct Debt; has named New York Life Insurance Company as a party defendant, as the representative of all holders of deposited securities of the Unsecured Direct Debt, and has named Equitable Life Assurance Society of the United States as the representative of all holders of securities of the Railways Debt. Thereafter, by stipulation of the parties and by order of the court, Louis S. Ottenheimer was permitted to intervene as a party defendant in his own behalf and in behalf of all other holders of bonds of the " Secured Direct Debt." He appeared and filed an answer in which, as a counterclaim, he asserted, in behalf of the bondholders he represented, that, under the terms of their bonds and under the terms of the agreement and plan of 1922, holders of obligations of the Secured Direct Debt have a right to payment of defaulted interest out of the moneys held by the committee prior and superior to the rights of holders of other classes of obligations. He alone has appealed from the order dismissing both the complaint and the counterclaim which he has pleaded.

The Government of the United States of Mexico is, of course, immune from suit here. The courts of this State cannot adjudicate any controversy to which a foreign sovereign government is a necessary party unless the

foreign government, as a suitor, asks our courts to enforce some right claimed by the foreign government or, voluntarily, submits to our courts for adjudication a claim which another makes against it. In this action neither the plaintiffs nor the defendant Ottenheimer seek any relief against the Government of Mexico or redress for a wrong which they claim the Mexican Government has done. Both ask the court only to pass upon conflicting claims to a fund which is here and in which, it is said, the Mexican Government has no property right or interest. They seek an adjudication of the rights only of those who are subject to the jurisdiction of the courts in a fund which is held by the plaintiffs. The problem is, primarily, whether the Mexican Government is a necessary party, because of its claim that it owns the fund and that none of the parties who urge conflicting claims have any legal or equitable interest in the fund, and, incidentally, whether the controversy between the parties to the action involves questions upon which the court cannot pass without invading the sovereign right of immunity of the Mexican Government.

Since the defendant Ottenheimer, alone, has appealed to this court, we are concerned only with the controversy between holders of the bonds of the Secured Direct Debt, who are represented by him, and the other parties to the action. That controversy involves, however, as we have said, conflicting claims to the fund received by the committee and it is plain that, in an action for an accounting, an adjudication of the claims of one party requires the adjudication, also, of the claims of all the other necessary parties to the action who assert an interest in the same fund. It follows that if the order of the court below, rejecting jurisdiction of the action, is reversed, the court must resume jurisdiction of the action and determine the conflicting claims of all the necessary parties, regardless of whether such parties are appellants or respondents here. There may, of course, still be some questions, which the parties seek to raise, upon which the court cannot pass without the consent of the Government of Mexico; but the court must

pass upon all questions, where it has jurisdiction, if all necessary parties are before it.

It is said that, at least in part, the action for an accounting is an action *in personam;* that a judgment *in personam* is an adjudication binding only upon the parties to the action, and that the Government of Mexico, which is not a party to the action, cannot object to the court taking jurisdiction of an action and granting judgment *in personam*, binding upon the parties to the action but not upon the foreign State. The principal, if not the sole, object of the accounting action is to obtain a judgment determining the proper disposition of the fund. We decide whether the court has jurisdiction, without the presence of the Government of Mexico, to direct how that fund should be distributed before we consider whether the court might take jurisdiction to grant a judgment *in personam* upon minor related questions, even though it could not adjudicate the principal controversy.

A foreign government, like the government of a State or of the United States, cannot be called to account in the courts of this State. Redress for repudiation even of a solemn contract or for injury inflicted without any justification by a sovereign State cannot be granted by the courts without the consent of the sovereign State. For such redress a party wronged must invoke the aid of the political branches of the government ( *United States* v. *Diekelman*, 92 U. S. 520); nor may a court grant redress against an agent of the foreign State for a wrong inflicted within the territory of the foreign State with the sanction or by command of the sovereign. " Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." As corollary of that principle, there is " immunity of individuals from suits brought in foreign tribunals for acts done within their own States, in the exercise of governmental authority." ( *Underhill* v. *Hernandez*, 168 U. S. 250, 252.) That immunity extends to property here

of the foreign sovereign and no action can be maintained to take the property of a sovereign State or to subject it to judicial process. (*Stanley* v. *Schwably*, 147 U. S. 508.) Even an agreement by the sovereign that its property shall be applied upon a debt of the sovereign cannot be enforced in our courts against such property, for such an agreement " amounts to nothing more than an engagement of honour, binding, so far as engagements of honour can bind, the government which issues them, but are not contracts enforceable before the ordinary tribunals of any foreign country, or even by the ordinary tribunals of the country which issued them, without the consent of the government of that country." (*Twycross* v. *Dreyfus*, 36 Law Times Rep. 752 [1877], per JESSEL, M. R. Cf. *Smith* v. *Weguelin*, 8 Eq. 198 [1869].)

If, as the Government of Mexico asserts, the object of this action is to enforce an agreement, made by that government, affecting its public debt or to reach moneys held by the plaintiffs as its agents, then, under these well-established principles it is plain that the action cannot be maintained in the courts of this State. The question, however, remains whether the courts must accept the assertion of the foreign State though disputed by the appellant and the other parties to the action. The appellant maintains, as we have said, that the moneys, in the hands of the committee, are held by it as trustee for the bondholders, not as agent of the government; that no party is seeking to compel the foreign government or its agents to perform any agreement of the government; and that no party is seeking redress for breach of any agreement made by the government or to apply property of that government to payment of its public debt. They maintain, on the contrary, that they seek merely to distribute, among the real owners, moneys held in trust for them.

Whether the moneys are the property of the Mexican Government and are held by the plaintiffs as its agents, or whether the moneys are held by the plaintiffs as trustees for the benefit of the depositing bondholders, depends upon

the proper construction of the agreement or agreements under which the moneys were paid to the plaintiffs. Argument, certainly not without force, can be made that the moneys do not belong to the Mexican Government; but the courts below have refused to pass upon the proper construction of these agreements on the ground that they cannot pass upon the validity of the claim of a foreign government, when the government refuses to submit that claim to the arbitrament of the courts.

That leaves the parties in an anomalous situation. The Mexican Government cannot obtain the moneys without appeal to our courts and proof that the moneys belong to it; yet, under the decision we are now reviewing, the mere assertion of a claim of ownership by the Mexican Government halts the trial and determination of whether the moneys belong to the parties to the action rather than to the Mexican Government, even though no judgment is asked against the foreign government or against any person who is shown to be agent of the government. Immunity of a government and its property from coercion by the courts includes, it is said, immunity from investigation by the courts of the government's assertion that it owns property which parties to an action assert belongs to them, and which these parties assert is not in the possession of the foreign government or its agents.

In the recent case of *Ezra* v. *Lamont* (265 N. Y. 635) the plaintiff sought to rescind or repudiate the agreements under which the moneys had been paid to the committee by the foreign government. There, if the plaintiff successfully sustained the allegations of the complaint, the conclusion would necessarily follow that the committee may not use the moneys it has received from the Mexican Government for the purpose for which the moneys were paid to it, and upon rescission of the contracts the committee would hold the moneys not for the benefit of the depositing bondholders but for the Mexican Government. No court could by its decree order that the moneys held for that government should be put to any other use. In the case we are

now considering, though the pleadings contain many allegations contained, also, in the pleadings in *Ezra* v. *Lamont* (*supra*), yet the pleadings contain other allegations and present other claims which, if sustained, will establish the right of the bondholders to distribution of the moneys held by the committee. There lies the distinction between the two cases.

The mere assertion by the Government of Mexico that the committee holds the moneys not as trustee for the bondholders but as agents of the government for distribution among the bondholders does not, we think, preclude the court from determining whether, under the contracts, the committee has acted and is acting solely as agent and trustee of the bondholders and not as agent of the government. In the recent case of *Compania Espanola de Navegacion Maritima, S. A.* v. *The Navemar* (303 U. S. 68) the Supreme Court of the United States has discussed the question of how far a suggestion by a foreign sovereign that it is the owner of property which is the subject-matter of a suit in the courts here must be accepted as true by the court and requires the court to refuse jurisdiction of the suit. There the court held that such a suggestion, made by a foreign government to the court, constitutes merely the statement of a claim by the foreign government, and is not proof of the allegations contained therein. The right of the foreign government to demand the return of its property or to demand that the court shall recognize that the property is immune from judicial control is, then, " an appropriate subject for judicial inquiry upon proof of the matters alleged; " but the assertion of the claim gives to the foreign government only the right to intervene and prove its allegation that it owns the property. The court, in the absence of such proof, is not required to cease its consideration of the controversy between the parties to the action or to deny effect to the proof, produced by such parties, to sustain the pleaded allegations. If, in this case, the allegations of the pleadings are sustained, that the plaintiffs hold moneys received from the Mexican Government in trust for the

depositing bondholders, then the court can direct distribution of the fund without invading the sovereign immunity of the foreign government, without sitting in judgment on the acts of the government done within its own territory, and without interference with any property which belongs to the government or is in its own possession or in the possession of its agents. The foreign government does not become a necessary party to the action, unless the issues raised in the action by the *pleadings of the parties* in the action cannot be decided without the presence of the foreign government. No issue is raised merely by suggestion of a government which refuses to intervene and to present proof to sustain its allegations; and immunity from suit exists only where the object of the suit is to enforce a claim or right against the foreign government or its property. The mere assertion by a foreign government, without proof, that property which is the subject of controversy between parties here belongs to the government, does not constrain the court to refuse jurisdiction of that property.

It is true, of course, as the court pointed out in *Compania Espanola de Navegacion Maritima, S. A.* v. *The Navemar* (*supra*, p. 74), that a foreign government may claim immunity from suit either in the court or through diplomatic channels, and " if the claim is recognized and allowed by the executive branch of the government, it is then the duty of the courts to [accept the claim of immunity] upon appropriate suggestion by the Attorney-General of the United States, or other officer acting under his direction." Here, as the United States Attorney states, he has done no more than to " present " the suggestion of immunity, " at the request of the Secretary of State of the United States, through the Attorney General, following diplomatic representations * * * made to the Secretary of State in behalf of the Government of Mexico," and the United States Attorney adds significantly: " In bringing this matter to the attention of the Court I respectfully inform it that the United States does not intervene as an interested party and that I do not appear either for the United States

or for the Government of Mexico, but I present this suggestion as a matter of comity between the Government of Mexico and the United States Government for such consideration as the Court may deem necessary and proper." It seems plain that such a presentation of a " suggestion " does not indicate that the executive branch of our government has recognized and allowed the claim of the Government of Mexico, and the court remains free to give to the claim of immunity " such consideration as the Court may deem necessary and proper."

We do not upon this appeal decide whether the agreements should be construed as constituting the committee the agent of the Government of Mexico for the distribution of the moneys which the committee has received and holds, or whether under the contracts the committee became the trustee of such moneys for the depositing bondholders. That is a matter which must be decided, in the first instance, in the Supreme Court. We hold only that the Supreme Court has jurisdiction to pass upon the issues raised in the pleadings in this action and to render appropriate judgment, unless it shall appear at the trial that the Government of Mexico has, in fact, retained some right or interest in the property which is the subject of the accounting, and is a necessary party to any adjudication.

The orders should be reversed, without costs, and the motion to dismiss denied.

CRANE, Ch. J., HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Orders reversed, etc.