Dore, J.
(dissenting in part). Combined in a single record there are eleven appeals by plaintiff, intervening bondholders, attorneys, and creditors from a final judgment entered on the report of three referees in a voluntary accounting action. The judgment approves the account as filed, dismisses all objections and claims of creditors, grants the accounting committee full discharge for the period accounted for, provides for distribution of the fund held by the committee in the manner proposed by the accounting plaintiff, and grants allowances to counsel and the referees. Of the eleven appeals, seven involve fees and allowances to counsel for different parties; three are by claimants whose claims were disallowed; only one, directly affects the account and seeks to alter the distribution in favor of the owners of Government bonds against owners of railway bonds. ‘
Plaintiffs Lamont and others as the International Committee of Bankers of Mexico (herein “plaintiff”) organized the committee in 1919 as a protective committee to deal with the external debt of Mexico which had gone into default in 1914. Thereafter, 98% of the total principal of the defaulted bonds ($500,000,000) was deposited with the committee under a deposit agreement dated July 1, 1922. The committee by a series of agreements, succeeded in collecting from Mexico, in part payment of different classes of the defaulted bonds, over $45,000,000. It disbursed to the bondholders and for expenses $38,791,657.93, leaving a balance in its hands of $6,284,900.75. In 1932 the committee commenced this action for a voluntary accounting, discharge, and directions for the distribution of the funds. The account was filed in 1942.
The long delay between the inception of the accounting action in 1932 and filing the account in 1942 was in large part caused by the refusal of Mexico, on the ground of sovereign immunity, to submit to the jurisdiction of the *883 New York Supreme Court. This objection was successful at Special Term (Lamont v. Travelers Insurance Co., N. Y. L. J., Jan. 31, 1933, p. 611, col. 4); the dismissal on the ground stated was affirmed by this court in 1938 (254 App. Div. 511); but in 1939 on the appeal by a single bondholder, Louis S. Ottimer, the Court of Appeals reversed the judgment of dismissal, and held that Mexico’s mere assertion of a claim was not sufficient without proof that the property which was the subject of the controversy belonged in fact to Mexico (281 N. Y. 362, motion for reargument denied, 282 FT. Y. 676, motion to amend remittitur denied 284 N. Y. 633).
Thereafter, Special Term appointed a referee to determine factually whether Mexico was an indispensable party to the accounting action and all other issues. After numerous hearings, that referee reported that Mexico had no interest in the fund and his findings were confirmed by Special Term in February, 1942. This court affirmed in May, 1944 (267 App. Div. 984 [affd. 294 N. Y. 827]), and motions for reargument and leave to appeal were denied (268 App. Div. 773).
Thereafter Special Term directed the same referee to take and state the account and hear all other issues; but on his resignation in February, 1943, Special Term in April, 1943, appointed in his place three referees.
The referees sitting as a panel of three held numerous hearings on objections to the account, on claims, and on the distribution of the funds and thereafter reported to the court dismissing all claims, overruling all objections and approving the accounts and distribution proposed by the committee as accounting party. In the judgment appealed from, Special Term confirmed in all respects the referees’ findings and also fixed the allowances for counsel and the three referees.
The committee was entitled by the terms of the deposit agreement to compensation; its services extended from 1919 to date; no compensation has at any time been claimed or received by the committee or its members; and at the hearing before the referees the committee and all its members waived any compensation whatever for their services.

Allowances to Counsel.

Plaintiff and three intervening Mexican banks appeal from the allowance of $300,000 to the Ottimer counsel. As to allowances of attorneys other than the Ottimer counsel, plaintiff committee does not appeal. The Mexican banks alone appeal from the allowances made by Special Term to the attorneys for the other interveners; and a number of attorneys for such interveners also appeal on their own behalf urging that the allowances made to them are insufficient and should be substantially increased. The attorneys for the plaintiff also appeal asking that their allowances be increased.
After an examination of the voluminous records and the briefs I consider that the allowances made to the attorneys for the bondholders other than the Ottimer group should not be increased but should be affirmed, so far as appealed from.
I also concur in the conclusion that the allowance of $100,000 made to plaintiffs’ counsel should not be increased, although counsel for the committee are in a different status from all other counsel involved. Committee counsel were regularly employed by the committee as trustees and performed necessary services in the administration of the trust and do not depend for their compensation upon proof of creating a fund or procuring its distribution. The authority of tile committee to employ counsel, attorneys and accountants, and to fix their *884 compensation was expressly provided by the deposit agreement which also set up an expense fund in the amount of 1%% of deposited bonds. Of this fund, on the date of the account a balance of $1,578,338.81 remained. Such counsel on this appeal claimed for their services in the accounting from April, 1942, to the date of final judgment, a period of over four years, the sum of $200,000. For the preceding twenty-three years of work for the committee (1919 to 1942) the same counsel have already received compensation totaling $600,000. The $200,000 asked for in this proceeding is in addition to that sum. The only opposition was expressed by an attorney for the appealing Mexican banks. The court fixed $100,000 as a proper fee.
The services rendered by committee’s counsel involved the preparation of the account with receipts of over $45,000,000 and distribution of over $38,000,000, the trial of numerous objections against the committee’s account and proofs of claim, the disposition out of court of 117 additional proofs of claim, the conduct of appeals on interventions and on the claim of interest by Mexico and the appeals taken by Mexico from the judgment of dismissal, extensive correspondence and innumerable procedural details. In addition, there was the difficult question of distributing approximately $7,000,000 among numerous classes of bondholders with different interests in the fund. The outcome was completely successful; all objections were recommended by the referees for dismissal and the recommendations confirmed by the court; the claims of creditors were all disallowed; Mexico’s claim was successfully disposed of and the committee’s plan for distribution fully approved.
Nevertheless in the light of the amount of fees already received and the large aggregate total fees here involved, the allowance made to plaintiff’s counsel should not be increased. Plaintiff’s counsel, unlike the others, will have to render further services prior to and in the final accounting and distribution of the balance of the fund and a further allowance can then be made.

Attorneys and Counsel of the Ottimer Group

These were attorneys for Louis S. Ottimer, an intervener, the owner of one bond of the face value of $485. Both plaintiff and the Mexican banks contend that the $300,000 allowed to the Ottimer counsel was excessive and should be reduced.
The essential basis for this admittedly very large allowance to one group of counsel in a voluntary accounting proceeding is the claim that btit for their efforts the balance of the fund of approximately $7,000,000, in the committee’s hands, would not have been brought into the jurisdiction of the court or made available for the bondholders. The basis of that contention is the undisputed fact that . Ottimer, by his counsel the Blumenthal group, alone appealed to the Court of Appeals from the decision of Special Term and of this court dismissing the accounting action on the ground that Mexico was a necessary party' (254 App. Div. 511, supra).. Such attorneys and counsel, on appeal, raised the distinction between Mexico’s claim to an interest in the fund and the factual existence of such interest. As indicated, the Court of Appeals in 1939 (281 N. Y. 362, supra) reversed the dismissal by this court and thereafter the accounting action proceeded. The referees in their report correctly stated “no other counsel in this case is responsible for the presentation and argument of this point before the Court of Appeals”, and added that they were entitled to as “substantial a fee as can be reasonably permitted.”
*885 Plaintiff’s counsel were at the time of the opinion that an appeal would be futile because the law up to that time had sustained the dismissal of such an action on the suggestion of the interest of a foreign sovereign in the fund and its claim of immunity as such. Plaintiff and its counsel, however, recognize that the Blumenthal group in taking the appeal "rendered a substantial service to the depositing bondholders, not rendered by the Committee or its counsel” and that their services "were of expert quality and accomplished the substantial result of expediting the distribution of the funds in the hands of the Committee.”
The proper basis for compensation of Ottimer’s attorneys is not the claim urged by them in their application of having brought the fund into the court. They did not create or as contended on appeal "recreate” the fund now to be distributed. These funds as well as all the funds previously distributed were the result of the plaintiff’s activity in procuring payment from Mexico to the bondholders of over $45,000,000 on the defaulted debt.
Further, by his answer and counterclaim Ottimer sought to'secure a first preferential claim upon all funds received by the plaintiffs in favor of the Government secured debt in which class was Ottimer’s single bond. He thus sought to obtain a preference similar to that ineffectually sought by two other bondholders whose claims were defeated (Gallopin v. Winsor, 234 App. Div. 601; Erza v. Lamont, 241 App. Div. 805, affd. 265 N. Y. 635, certiorari denied 295 U. S. 766). In affirming the judgment of dismissal this court pointed out the difficulty that Ottimer and his counsel had. created by the counterclaim when it said (254 App. Div. 511, 512, supra): " The app eh lant [Ottimer] makes certain counterclaims to the fund and asks for its distribution in accordance with his demands.” The Court of Appeals in general language disposed of this contention that was so dangerous, to distribution of the fund. ' ■
The Ottimer attorneys in the aggregate claimed to have spent over 7,500 hours of work during upwards of sixteen years, from 1931 to February, 1946, but no contemporary records or time " sheets were furnished in support of the time claimed to have been expended. Plaintiff points out that after filing a notice of appeal in 1933, Ottimer’s attorneys did not prosecute the appeal for five years, until 1938 when they brought the. case to this court and finally in 1939 to the Court of Appeals. During, that five years they were engaged in efforts to interest other attorneys.
While the Ottimer attorneys did not create the fund or bring it into court, they did by the reversal in the Court of Appeals facilitate distribution of the fund and performed valuable services to the bondholders. Their compensation however is not to be based on a salvage, percentage, premium or bonus basis. The evidence before the referees indicates that the return of the moneys to Mexico was refused by the committee on numerous occasions. The referees in their report said: "The Committee was of the opinion that it held the funds on behalf of the bondholders and that Mexico had no legal claim to the money * * *. Therefore, the Committee rejected and resisted Mexico’s claims to the funds.” Ho separate fund was created by these attorneys. There is therefore no basis for fixing compensation on a percentage of the fund recovered as in the case of derivative actions where funds are created or recovered through counsel’s activity; but this was the basis, of the Blumenthal affidavit, viz., 10% of the fund or $750,000.
The only sound basis for compensation to Ottimer’s counsel is that laid down in Sprague v. Ticonic Sank (307 U. S. 161). In that case petitioner *886 did not create a fund any more than Ottimer’s attorneys did in this ease, hut succeeded in establishing her claim and in so doing established the claim of fourteen other parties pertaining to the same bonds. So here Ottimer’s attorneys furnished valuable services in facilitating distribution of the amounts due on the Ottimer bond and accordingly facilitated distribution on the amounts due on all other bonds of his class and all other classes. It should also be kept in mind that any award on Ottimer’s appeal was contingent on success. But in the Sprague case the Supreme Court said (p. 167): “In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice.”
Subsequent to the Court of Appeals decision obtained by the Ottimer counsel, Ottimer’s attorneys took an important part in the proceedings before the first referee, Special Term, and in appeals to this court and the Court of Appeals on the issue of Mexico’s claims and also in the later accounting proceedings before the three referees. They also suggested an investment in short term Government bonds which resulted in a benefit to the bondholders by way of interest up to December 1, 1945, in the sum of $105,-186.58.
For all these coneededly valuable services a reasonable fee should be allowed. But attorneys are officers of the court and the court must limit allowances to what is fair and reasonable. In Matter of Gilbert (276 U. S. 294, 296) Chief Justice Tatt said: “We were desirous of making it clear by our action that the judges of the courts, in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance.”
For about twenty-three years work as counsel to plaintiff Committee during which time they succeeded in collecting a fund of over $45,000,000 for the bondholders, committee counsel received $600,000. Special Term has allowed to the attorneys for the Ottimer group substantially for a single appeal to the Court of Appeals that did not create any part of the fund one half of that sum of $300,000. I consider the allowance grossly excessive' and vote to reduce it to $100,000.

Other claims

Of the numerous groups who filed other claims before the referees or the court only three have appealed: (1) Max M. Hirson and others claiming counsel and receiver’s fees; (2) Oeland & Kuhn and Ira B. Kaplan for reimbursement of expenses and payment of services to a so-called Independent International Committee, and (3) David Burden & Co. and Bernard E. Singer for accounting services rendered to the intervener Hutner.
In addition only one intervener, Hutner, representing Mexico’s direct debt not secured by the customs revenue, has appealed with regard to the distribution recommended by the committee and the referees, and approved by the court. On this appeal Hutner confines himself to the contention that $571,-215.48 directed to be distributed on the railway debt should go to the Government debt chiefly on the ground that %% which the committee added to the expense fund in 1942 was wrongly computed. As a result Hutner contends that the proportionate burden proposed for the expenses on the Government bonds is three times as heavy as that imposed on the railways debt.
To discuss the details of these claims would unduly enlarge the scope of this opinion. After considering the evidence and the briefs, I concur with the court that on these issues the report of the referees and the judgment *887 of the Special Term confirming such report are consistent with the evidence and in accordance with law, and the judgment in such respects, so far as appealed from, should be affirmed.
For the reasons stated I vote to modify the judgment appealed from by reducing the allowance to the attorneys in subdivision 2 of paragraph N of the judgment from $300,000 to $100,000 and in all other respects to affirm the judgment. To that extent I dissent in part from the majority’s decision.
Glennon, Cohn and Peck, JJ., concur in Per Curiam opinion; Dore, J., dissents in part in opinion.
Judgment, so far as appealed from, modified only to the extent of reducing the aggregate amount of the allowance awarded the attorneys named in subdivision 2 of paragraph N of said judgment to the sum of $175,000 and in all other respects affirmed, with costs to the plaintiffs-appellants-respondents payable out of the fund. Settle order on notice.