LAURENCE FRAZIER et al., Respondents, *v.* FOREIGN BONDHOLDERS PROTECTIVE COUNCIL, INC., et al., Appellants.

First Department, November 24, 1953.

*James E. Nickerson* of counsel (*Wade Hampton* with him on the brief; *Root, Ballantine, Harlan, Bushby & Palmer,* attorneys), for Foreign Bondholders Protective Council, Inc., appellant.

*Hancock Griffin, Jr.,* of counsel (*Frank H. Heiss* with him on the brief; *Kelley, Drye, Newhall & Maginnes,* attorneys), for Hanover Bank, appellant.

*Copal Mintz* for respondents.

BOTEIN, J. The plaintiffs were owners of certain bonds issued by the Republic of Peru in 1927, which had been in default in the payment of interest since June 1, 1932. In 1947, Peru, through its agent, the defendant bank, offered new bonds, to be issued in exchange for the original bonds upon a waiver of all unpaid interest. The 1947 offer provided that if any of the " nonassenting bonds should ever be accorded treatment more favorable than that provided for assenting bonds hereunder, the assenting bonds shall be entitled to all the benefits thereof." Plaintiffs assented to this offer and exchanged their old bonds for new ones.

The defendant Protective Council, a quasi-public agency devoted to the protection of American holders of bonds of foreign Governments, repeatedly disapproved of this original Peruvian offer, and recommended to the original bondholders that they reject it. Finally, in January, 1953, Peru agreed, among other things, to issue scrip certificates for 10% of the amount of defaulted interest due on the original bonds. The additional benefits contained in this offer were authorized by the Congress of Peru. The legislation also provided for delivery of the scrip certificates to the current holders of new bonds, rather than to those who had previously held the original bonds. This last provision has given rise to the plaintiffs' complaint,

because prior to the January, 1953, offer they had sold their new bonds to other persons, and were therefore not entitled under the Peruvian law to receive the scrip.

In a prior class action one of the plaintiffs herein sued the bank, seeking judgment directing the bank to distribute the scrip certificates among those who had previously or would thereafter surrender the original bonds. The bank moved to strike the complaint on the ground that the scrip certificates were the property of Peru, that the defendant bank was not subject to jurisdiction because it was acting solely as an agent of Peru, and because the granting of the relief sought in the complaint would necessarily require the adjudication of a claim against a sovereign State. The motion was granted (*Frazier* v. *Hanover Bank,* 204 Misc. 922, affd. 281 App. Div. 861).

Now Frazier and another former bondholder bring a new class action, seeking damages for the alleged tortious conduct of the defendants in inducing Peru to breach its contract with them. In addition to the above undisputed facts, the present complaint sets forth additional allegations not contained in the previous complaint. It is alleged, *inter alia,* that the Protective Council represented to Peru that it enjoyed great prestige and influence and that its recommendation against acceptance of the 1947 offer would impair Peru's credit standing in this country and its qualification for the procurement of loans from the World Bank; that if Peru would improve its terms to an extent deemed adequate by the Protective Council, it would recommend acceptance of such improved offer; and that this recommendation would be followed by virtually all of the bondholders and would gain for Peru favorable credit standing in this country and with the World Bank.

Peru, it is alleged, believed these representations and persuasions, which were joined in by the bank, and reached an agreement with the defendants whereby it undertook to improve its offer. The defendants, finally, are alleged to have conspired and willfully induced the breach of contract by requiring Peru to issue the newly authorized scrip certificates to the current holders of new bonds, instead of those who, like plaintiffs, had originally received such bonds in exchange for the original bonds upon the terms of the 1947 offer. These allegations are in substance denied.

The defendants have also interposed defenses asserting that the plaintiffs' claim requires the court to sit in judgment on the decisions of a foreign Government made in the exercise of

its sovereign power and would necessarily require an adjudication as to whether Peru had breached a valid and existing contract with plaintiffs. It should be noted that through these defenses the defendants do not now claim, as was asserted in support of the bank's motion to dismiss the prior complaint, that the mantle of Peru's sovereign immunity envelops the defendants and shields them from the processes of this court. On that motion in the past action the bank contended that the court could not assume jurisdiction of the action because it necessarily involved adjudication of a claim against a sovereign State. If the claim were adjudicated, it would bring to bar a sovereign foreign Government. Here the defendants contend, as I see it, that an indispensable ingredient of the plaintiffs' cause of action will be an adjudication that the sovereign Republic of Peru breached its valid contract with them. Defendants submit that although such an adjudication will not be enforcible against Peru, and although no direct relief is sought against that nation, our courts would still have to pass·on the validity of an act of a foreign sovereign Government acting within the acknowledged sovereign powers of that Government —and the necessity of offering such proof presents an impassable barrier to the successful prosecution of plaintiffs' claim.

The plaintiffs moved to strike the defenses, urging that they do not seek damages from Peru for its breach of contract but from these private defendants for their own tortious conduct in inducing and procuring Peru to break its contract. Special Term granted the motion, holding that the '' action in no wise involves sovereign immunity or the foreign government in any binding adjudication.''

But the immunity of a foreign sovereign, in all its implications, is not restricted to warding off only those assaults aimed directly at that sovereign as a party proper. Whenever the propriety of the acts of the foreign sovereign is placed in issue our courts, in deference to the historic principle that the king may not be sued, grant to the foreign sovereign as a matter of favor some measure of the immunity which the latter enjoys as a matter of right when party to an action. One sovereign gives due recognition of the stature of another sovereign, and in turn expects similar consideration (*The Schooner Exchange* v. *McFaddon,* 7 Cranch [U. S.] 116). It is a doctrine born of expediency, nourished in the council halls of nations as well as the courts of justice. Its dominant motif is political. It has gained stature in the world of international diplomacy

and politics, where an " incident " involving the dignity of nations is measured by its explosive potential as well as its legal implications. " It rests at last upon the highest considerations of international comity and expediency. To permit the validity of the acts of one sovereign State to be re-examined and perhaps condemned by the courts of another would very certainly ' imperil the amicable relations between governments and vex the peace of nations.' " (*Oetjen* v. *Central Leather Co.*, 246 U. S. 297, 303–304.)

Because of these practical considerations it is the general rule that when a foreign Government is recognized by our State Department, our courts will not sit in judgment on the validity of acts done by that Government within its own territory. This general rule holds true whether the foreign Government is sued directly or through an agent, or whether its actions are questioned collaterally in litigation between private citizens. (*Underhill* v. *Hernandez*, 168 U. S. 250, 252; *Oetjen* v. *Central Leather Co.*, 246 U. S. 297, *supra; Ricaud* v. *American Metal Co.*, 246 U. S. 304; *Hewitt* v. *Speyer*, 250 F. 367; *Bernstein* v. *Van Heyghen Freres Societe Anonyme*, 163 F. 2d 246; *Lamont* v. *Travelers Ins. Co.*, 281 N. Y. 362; *Telkes* v. *Hungarian Nat. Museum*, 265 App. Div. 192.)

The plaintiffs' characterization of the defenses as an attempt to immunize a private citizen for wrongdoing to another private citizen must be considered in juxtaposition to the assertion in their brief that such wrongdoing resulted in " an outright and unabashed repudiation " by Peru. Our courts are traditionally loath to resolve such issues. In *Oetjen* v. *Central Leather Co.* (246 U. S. 297, *supra*), and *Ricaud* v. *American Metal Co.* (246 U. S. 304, *supra*) the Supreme Court affirmed the dismissal of suits between private citizens because they involved personal property confiscated in Mexico by armed forces of General Carranza, whose Government later became the *de jure* Government of Mexico. And in *American Banana Co.* v. *United Fruit Co.* (213 U. S. 347) it was alleged that Costa Rican soldiers and officials instigated by the defendant seized property belonging to the plaintiff. In affirming the judgment dismissing the complaint, the court, by Mr. Justice HOLMES, said (pp. 358–359) : " The fundamental reason why persuading a sovereign power to do this or that cannot be a tort is * * * that it is a contradiction in terms to say that within its jurisdiction it is unlawful to persuade a sovereign power to bring about a result that it declares by its conduct to be desirable and

proper. * * * A conspiracy in this country to do acts in another jurisdiction does not draw to itself those acts and make them unlawful, if they are permitted by the local law.''

To the same effect and most apt is the following self-explanatory sentence from *Hewitt* v. *Speyer* (*supra,* p. 371): '' There can be no escape from the proposition that either the government of Ecuador wrongly diverted from the bondholders the moneys paid to Speyer & Co., in which event the courts of the United States must disclaim any jurisdiction to adjudicate upon the matter, or such diversion of the revenues was lawful, in which event the complainant is without a cause of action.''

Plaintiffs seek to distinguish the *American Banana Co.* case by asserting that the alleged persuasion in this case took place within the United States. Again, the plaintiffs are thinking within the dimensions of their local tort action, rather than of the preponderating international considerations. The decisive act in the alleged repudiation of the contract was the enactment of the law by the Congress of Peru.

We need not reach the question as to whether in respect of the Peruvian Government's action the alleged '' repudiation of its obligations by decrees, is contrary to our public policy and shocking to our sense of justice and equity.'' (*Vladikavkazsky Ry. Co.* v. *New York Trust Co.,* 263 N. Y. 369, 378.) The only question before us concerns the right of defendants to assert these defenses at the trial. Certainly it cannot be said at this state of the litigation that Peru's action is so shocking or contrary to our notions of justice as to warrant dismissal of the defenses. It did not reject an obligation *in toto,* but elected to pay one class of persons instead of another. For aught that appears in the record the alleged breach and the alleged inducement were motiveless and profitless; and an action might just as plausibly have been brought by the current bondholders had Peru given the scrip certificates to the class represented by plaintiffs. At the least, the defendants should be permitted to adduce evidence in support of their defenses bearing on whether determination of the merits of the plaintiffs' claim will entail passing on the validity of the action of a sovereign acting within the scope of its sovereign competency. Perhaps our courts should be even more sensitive to the involvements of a sovereign's action when the sovereign is not a party to the action, and the adjudication as it affects its prestige and dignity partakes of the nature of an ex parte proceeding.

The order appealed from by the defendant Hanover Bank should be reversed and the motion to strike out its defenses

denied. The order appealed from by the defendant Protective Council should be reversed insofar as it strikes out the defense pleaded in paragraph 22 of its answer and otherwise affirmed.

COHN, J. P., BREITEL, BASTOW and BERGAN, JJ., concur.

Order appealed from by the defendant, Hanover Bank, unanimously reversed and the motion to strike out its defenses is denied. The order appealed from by the defendant, Protective Council, unanimously reversed insofar as it strikes out the defense pleaded in paragraph 22 of its answer, and otherwise affirmed. Settle order on notice. [See *post*, p. 655.]