Van BOKKELEN and Rohr S. A., Plaintiff and Counterdefendant,

v.

GRUMMAN AEROSPACE CORP., now known as Grumman American Aviation Corp., and Grumman Corp., Defendants and Counterclaimants,

v.

Enrique ROHR, Additional Defendant To Counterclaim.

No. 75 C 1383.

United States District Court, E. D. New York.

Feb. 28, 1977.

On Motion to Dismiss May 26, 1977.

Richard J. Donohue, Olson & Donohue, Hackensack, N. J., Rothblatt, Rothblatt, Seijas & Peskin, New York City, for plaintiff and counterdefendant.

Cahill, Gordon & Reindel, New York City, for defendants and counterclaimants; Leonard A. Spivak and Terrence J. O'Rourke, New York City, of counsel.

PLATT, District Judge.

Defendants have made two motions herein; the first for an order pursuant to Rules 36 and 37 of the Federal Rules of Civil Procedure providing (i) that Request to Admit No. 6 of Defendants' First Request for Admissions dated March 10, 1976 be deemed admitted, and that plaintiff pay the attorneys' fees and disbursements of this motion to defendants or, in the alternative, (ii) that they admit or deny Request to Admit No. 6 and that plaintiff pay the attorneys' fees and disbursements of this motion to defendants and the second for an order pursuant to Rule 56(b) of the Federal Rules of Civil Procedure granting summary judgment in favor of defendants and against plaintiff and dismissing plaintiff's complaint in its entirety, and awarding defendants their costs and reasonable attorneys' fees incurred in defending this action.

In this decision we will consider defendants' motions in inverse order to which they were actually made.

According to plaintiff's complaint, it entered into an agreement with the defendant Grumman Aerospace Corp. dated April 15, 1972, as a broker with exclusive distributorship rights in the South American countries of Argentina, Brazil, Chile, Paraguay, Bolivia, Uruguay and Ecuador, and the right (not exclusive) to sell a specific type of plane (Ag-Cat) within the limits of Peru, the Guianas and Central America. The Ag-Cat is a farm type of crop dusting plane. The contract was for a two year period but was extended for an additional two years by virtue of a telegram submitted in October of 1973.

Pursuant to the contract, plaintiff undertook to negotiate the sale of 44 Ag-Cat planes to a corporation known as ANAPLA which was acting on behalf of ten Brazilian companies concerning the purchase of Ag-Cats with financing to be supplied from the Government of Brazil.

Plaintiff alleges in its complaint that negotiations for the sales began in 1968 and it devoted considerable time to making "contacts" and suggestions with respect to the best method of consummating the agreement. In February of 1974, ANAPLA is alleged to have submitted an order for the purchase of Ag-Cat planes which had the Brazilian Government's approval for financing. In the middle of 1974 the Government of Brazil established a committee (COTAC) whose function was to oversee the importation of aircraft into Brazil. The plaintiff alleges further that its officers had several meetings with representatives of the Brazilian Government in an effort to persuade them to continue with further plans to enable ANAPLA to purchase and import such aircraft.

According to the complaint, the defendants attempted to and did interfere with plaintiff's exclusive distributorship rights and its present and future economic advantage therefrom; that plaintiff's rights were therefore breached by the defendants and plaintiff suffered substantial damages as a result thereof.

An examination of the depositions submitted on this motion reveals that the gravamen of plaintiff's complaint appears to be based upon the loss of the potential sale of the 44 Ag-Cats by the defendant Grumman through the plaintiff's distributorship to ANAPLA with the financial aid and import permission of the Brazilian Government because of the alleged interference of defendants' representatives.

Suffice it to say at this juncture that there may be one or more issues of fact to be resolved at a trial of this matter.

In addition, it should be noted that on this motion the defendant Grumman relied heavily upon a letter dated the 2d of September, 1975, addressed to The Chairman of Grumman Industrial LTDA by the Chairman of COTAC which sets forth four reasons why the COTAC Board on April 10, 1975, denied import permits to ANAPLA for Ag-Cat planes.

Defendant Grumman takes the position that this document, which is certified, is both self-authenticating under Rule 901(b)(7) and admissible as an exception to the hearsay rule under Rule 803(8) of the Federal Rules of Evidence.

While such document may be sufficiently authenticated so as to meet the requirements of the first of such Rules, it is far from clear to this Court at this point that the same meets the requirements of the second of such Rules.

There may well have been a duty on the part of the Chairman of the COTAC Board to record such "reasons" in minutes of the meeting of the Board on April 10, 1975, and a certified copy of such minutes *might* meet the requirements of Rule 803(8), but it is questionable whether a certified copy of a letter, such as the one that has been tendered here, meets such requirements.

It is elementary, of course, that merely "because a document is authenticated does not mean it is admissible. It may, for example, need to meet the hearsay requirements if it is offered to prove the truth of assertions made in it." 5 Weinstein's *Evidence* ¶ 901(a)[02] at page 901–20. *See*

*Johnson v. Lutz*, 253 N.Y. 124, 170 N.E. 517 (1930). Such is the case here.

Moreover, this particular letter does not, as defendants so strenuously argue, necessarily negative plaintiff's claim. In essence, plaintiff appears to be claiming that defendants' employees by their activities may have placed a Brazilian aircraft manufacturer into a position of being able to assert to the COTAC Board that it had the capability of producing the Ag-Cat plane or its equivalent thereby giving rise to the first of such Board's reasons, viz: "national capacity of production".

Under all such circumstances, the Court believes that it must deny defendants' motion for summary judgment.

In their other motion (the first of the two motions) defendants seek to compel plaintiff to admit or deny that the statement of reasons set forth in the letter from the Chairman of COTAC are "the true and complete circumstances under which COTAC on April 10, 1974, voted against the importation of agricultural aircraft".

Plaintiff answered this request for admission by stating that it had never seen the document until it was given to it by its attorney and therefore could neither admit nor deny the validity of the document nor its content.

As the Court understands it, plaintiff is not denying that the document has been properly authenticated but is merely disclaiming knowledge of the truth of the assertions made in the letter by the Chairman of COTAC.

As indicated above, the validity of such assertions in their present form would appear to be proper subjects of cross-examination.

Accordingly, the Court, pursuant to Rule 36 of the Federal Rules of Civil Procedure, will make a determination at this point that a disposition of defendants' request will be reconsidered at a pretrial conference immediately prior to the trial.

For the foregoing reasons both defendants' motions must be, and the same hereby are, denied at this time.

SO ORDERED.

## SUPPLEMENTAL MEMORANDUM AND ORDER

## ON MOTION TO DISMISS

The defendants in this action have moved to dismiss on the ground of lack of jurisdiction under Rule 12(b) of the Federal Rules of Civil Procedure. For reasons stated below, such motion is granted, not for lack of jurisdiction, but because there is no justiciable issue of fact.

The facts of this case are set out in this Court's opinion of February 28, 1977, which denied the defendants' previous motion for summary judgment. It is sufficient for our purposes here to state that the plaintiff was the defendants' agent for the purpose of selling aircraft in Brazil. The plaintiff failed to sell any aircraft because the Brazilian government refused to issue import licenses, and the plaintiff alleges that this refusal was in some manner caused by the defendants, thus depriving the plaintiff of his agency fees.

The previous motion for summary judgment was denied because, first, at that time the defendants had submitted a letter from a Brazilian official which was properly authenticated under Rule 901(b)(7), but which the Court held was inadmissible in evidence under Rule 803(8). This letter expressed the reasons for the denial of the import licenses, but as the letter was inadmissible in evidence, the reasons were not properly before the Court.

As the Court suggested, the defendants have since submitted a certified copy of the minutes of the meeting of the Brazilian agency named COTAC in which the licenses were denied. Further, the parties have also submitted a stipulation that COTAC is an official agency of the Brazilian government. Therefore, we now hold that those minutes would be admissible to show the Brazilian government's reasons for denying the licenses.

The second ground for denying the defendants' summary judgment motion was that even assuming the defendants were able to prove the reasons for the denial, such reasons did not eliminate plaintiff's claim because as this Court stated in its previous opinion, "plaintiff appears to be claiming that defendants' employees by their activities may have placed a Brazilian aircraft manufacturer into a position of being able to assert to the COTAC Board that it had the capability of producing the Ag-Cat plane or its equivalent thereby giving rise to the first of such Board's reasons, viz: 'national capacity of production'."

Now the question has been raised whether the above issue is non-justiciable for reasons expressed in the recent Second Circuit opinion in *Hunt v. Mobil Oil Corp.*, 550 F.2d 68 (2d Cir. 1977).

In that case the plaintiffs were suing the defendant oil companies for losses incurred when Libya nationalized the plaintiffs' assets. The government of Libya was not a defendant, but the plaintiffs alleged that *but for* the conspiracy of the defendants, Libya would not have acted as it did. The Court of Appeals quoting the District Court stated that this "would require judicial inquiry into 'acts and conduct of Libyan officials, Libyan affairs and Libyan policies with respect to plaintiff's as well as other oil producers' properties and the underlying reasons for the Libyan government's actions.'" (550 F.2d at 72, *quoting* 410 F.Supp. 10, 24).

■ This type of inquiry raised the question of the applicability of the act of state doctrine. That doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804, and applies to "acts done within their own states in the exercise of governmental authority." *Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). The justification for this doctrine was explained by Justice White in *Alfred Dunhill of London v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 1863, 48 L.Ed.2d 301 (1976), as follows:

"The major underpinning of the act of state doctrine is the policy of foreclosing court adjudications involving the legality of acts of foreign states on their own soil that might embarrass the Executive Branch of our Government in the conduct of our foreign relations."

*See also, Banco Nacional de Cuba v. Sabbatino, supra,* 376 U.S. at 427–428, 84 S.Ct. 923.

In *Mobil Oil* the Court applied this doctrine to the facts and said "[e]xpropriations of the property of an alien within the boundaries of the sovereign state are traditionally considered to be public acts of the sovereign removed from judicial scrutiny by application of the act of state rubric." (550 F.2d at 73).

The Court, therefore, held that the claim was non-justiciable and affirmed its dismissal.

■ In our case the decision of the Brazilian government to deny import licenses is within the powers normally exercised by a sovereign. The control of foreign trade, like the expropriation of oil wells, involves a decision of a government acting within its own territory. As such the decision here was of type covered by the act of state doctrine.

Further, this Court cannot see how the case at bar can be resolved without an inquiry into why the Brazilian government acted as it did in denying the licenses. Such an inquiry would necessarily have to include the question of whether Grumman, directly or indirectly, improperly influenced that decision. The answer to that question easily might "embarrass the Executive Branch of our Government in the conduct of our foreign relations." *Dunhill, supra,* 425 U.S. at 697, 96 S.Ct. at 1863. For this reason this case is within the act of state doctrine and is non-justiciable.

■ In opposition to this the plaintiff relies primarily on the *Dunhill* decision. In that case, the plaintiff mistakenly paid money to the Cuban government and was seeking its return. The plaintiff argues that the third section of that opinion, at 695–706, 96 S.Ct. at 1861–1867, carves out a "commercial activities" exception to the act of state doctrine.

Unfortunately for the plaintiff, the third section of *Dunhill* did not command the support of a majority of the Court and so cannot be considered authoritative. The Court's decision in *Dunhill* is stated in the second section, at 690–695, 96 S.Ct. at 1859–1861, which did receive majority support. The reasoning in that section was that the doctrine did not apply because Cuba had taken no positive action and that "[n]o statute, decree, order or resolution of the Cuban government itself was offered in evidence indicating that Cuba had repudiated her obligations in general or any class thereof or that she had as a sovereign matter determined to confiscate the amounts due three foreign importers." (At 695, 96 S.Ct. at 1861).

In our case the minutes of the meeting of Brazilian agency have been offered and those minutes clearly state the intention of the Brazilian government to deny import licenses, and so *Dunhill* would seem to be inapplicable.

However, we cannot completely dismiss the third section of the *Dunhill* opinion as the Second Circuit in *Mobil Oil* seems to adopt the reasoning contained therein apparently without realizing that that section of *Dunhill* did not command a majority of the Court (550 F.2d at 72–73). Therefore, we will discuss the plaintiff's argument.

The reasoning of the third section of *Dunhill* as adopted by *Mobil Oil* is that the act of state doctrine should not be extended "to situations where the sovereign has descended to the level of an entrepreneur." (550 F.2d at 73). In other words, where the government is not acting as a government, but rather is acting as a business, the act of state doctrine should not apply. However, in *Mobil Oil* the Second Circuit decided that this commercial activities exception did not apply because the expropriation of oil wells was not a purely commercial activity and so the act of state doctrine was applicable.

Similarly, in our case the denial of import licenses is not the type of activity that a business is capable of and is the type of activity normally considered within a government's power. Therefore, even if there is a commercial activities exception to the act of state doctrine, it does not apply here.

The defendants' motion to dismiss should be, and the same hereby is, granted.

SO ORDERED.