**Hammer DeROBURT, Plaintiff,**

v.

**GANNETT CO., INC., a Delaware corporation, and Guam Publications, Inc., a Hawaii corporation, both dba Pacific Daily News, Defendants.**

**Civ. No. 78–0375.**

United States District Court,
D. Hawaii.

Nov. 30, 1982.

Genevieve S. Richardson, A. Bernard Bays, Michael C. Davis, Carlsmith, Carlsmith, Wichman & Case, George M. Allen, Donald C. Williams, Honolulu, Hawaii, for plaintiff.

David J. Dezzani, James J. Bickerton, Goodsill, Anderson & Quinn, Honolulu, Hawaii, for defendants.

## DECISION AND ORDER

SAMUEL P. KING, Chief Judge.

### BACKGROUND

This is the second of the Court's decisions in this case addressing the act of state doctrine. By its order of October 13, 1982, the Court dismissed the plaintiff's libel suit on the grounds that the issues presented by the suit would require the Court to pass judgment on the act of a foreign sovereign and thereby raise issues made non-justiciable under the act of state doctrine. *DeRoburt v. Gannett,* 548 F.Supp. 1370 (D.Hawaii 1982). The Court fully described the facts of the case and explained the basis of its decision in that earlier order and will not repeat them here, except to the extent necessary.

Briefly, this libel suit was brought by Hammer DeRoburt, the President of the Republic of Nauru, against the defendants [referred to collectively herein as "Gannett"] attacking two articles published by Gannett in which DeRoburt allegedly was tied to the making of an illegal, improper and secret 1978 loan to the Marshall Islands Political Status Commission. DeRoburt seeks $20 million in compensatory and $20 million in punitive damages.

The October 13 order stated in part:

The court is convinced ... that resolution of the central issues in this case, either for or against the plaintiff, will inevitably lead to this court's examining or "sitting in judgment on" the validity, legality and motivation of the government of Nauru in making the 1978 loan to the Marshall Islands, and that such an examination is forbidden by the act of state doctrine, its underlying policies and rationale. The court finds that the issues raised by the defendants' characterization of the loan are sufficient alone to raise an effective act of state doctrine defense, and therefore it need not decide whether the questions surrounding DeRoburt's involvement in the loan implicate act of state considerations.[23]

*Id.* at 1383 (footnote in original).

As is apparent from the preceding, the act of state doctrine entered the case along two separate paths: first, with respect to the plaintiff's challenge to Gannett's *characterization* of the loan and, second, with respect to the plaintiff's reported *involvement* in the making of the loan. The Court's holding, as stated, was limited to the first of these avenues. The order, however, did address, without ruling on, the second issue at footnote 23:

The court does note however that several of the cases applying the act of state

doctrine to bar suits involved allegations that private parties *induced* foreign governments to act in wrongful or illegal ways.... The court suggests, without holding, that the principle might apply even more strongly when the party accused of having induced the act of state is himself a member of that government.

*Id.* (citations omitted; emphasis in original).

DeRoburt now has moved for leave to file a fourth amended complaint and for reconsideration and vacation of the Court's prior judgment. In a nutshell, DeRoburt has redrafted his complaint so as to excise any allegations challenging Gannett's characterizations of the 1978 loan. This, says DeRoburt, cleanses the case of any act of state doctrine concerns, as the Court would no longer be required to pass judgment on the validity and legality of the loan. The only issue remaining under the proposed amended complaint is whether DeRoburt was involved in the making of the loan. On the basis of his proposed fourth amended complaint, DeRoburt also seeks to have vacated the Court's order dismissing the suit.

The Court, then, is faced squarely with the question whether the allegation that DeRoburt had nothing to do with the 1978 loan raises issues non-justiciable under the act of state doctrine. For the reasons stated herein, DeRoburt's motions are denied.

DISCUSSION

Preliminarily, the Court points out that the loan reported in the articles was a loan by the government of Nauru from the public funds of the Republic of Nauru. DeRoburt's involvement was reported to be that of an instigator and go-between in the transaction.

Also, the Court is mindful of the fact that DeRoburt was at all relevant times, and remains, a highly placed individual in both the government and society of Nauru. From 1968 until 1977, he held the office of president, after which he became the leader of the opposition in the Nauruan parliament. He was reelected president on May 11, 1978. He has been Head Chief of the Nauru Local Government Council since 1955.

Thus, although bringing this suit in his individual capacity, DeRoburt is not one unconnected with the governmental affairs of Nauru.

As the Court noted in its October 13 order, several cases in the jurisprudence of the act of state doctrine have involved the inducement by a private party of the act of a foreign sovereign. An early decision, *American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed.2d 826 (1909) (Holmes, J.), was written when the act of state doctrine was considered primarily a choice of law principle. Nevertheless, the case held non-justiciable the question whether a private defendant instigated the government of Costa Rica to seize the plaintiff's property in that country.

More recently, *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,* 331 F.Supp. 92, 110 (C.D.Ca.1971), *aff'd,* 461 F.2d 1261 (9th Cir.1972), *cert. denied,* 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221, followed *American Banana* in holding that "inquiries by this court into the authenticity *and motivation* of the acts of foreign sovereigns would be the very sources of diplomatic friction and complication that the act of state doctrine aims to avert." (Emphasis added.) *Occidental* was an antitrust suit in which the defendant was alleged to have "induced and procured" various acts by certain sovereign states along the Persian Gulf regarding oil drilling rights. In dismissing the suit, the court found the enduring holding of *American Banana* to be that "the act of state doctrine bars a claim for antitrust injury flowing from foreign sovereign acts allegedly induced and procured by the defendant." 331 F.Supp. at 110.

*Hunt v. Mobil Oil Corp.,* 550 F.2d 68 (2d Cir.1977), went one step further in affirming the dismissal of a suit in which the defendants were alleged to have put the plaintiff in a position from which it was unable to come to an understanding with the Libyan government on an oil concession. The case was not so much one of inducement as of manipulation of a sovereign's acts. Moreover, the plaintiff had carefully

avoided making any challenge to the validity of the acts of state involved. The court nevertheless found that the excision of the Libyan government from the suit did not eliminate its actions as a necessary element of the action and, furthermore, that an examination of the motivation of the Libyan action inevitably involved its validity. *Id.* 76–77.

Finally, *Bokkelen v. Grumman Aerospace Corp.*, 432 F.Supp. 329 (E.D.N.Y.1977), was a suit alleging that the defendant was responsible for the denial of import licenses by the Brazilian government. The court there held that the case could not

be resolved without an inquiry into why the Brazilian government acted as it did in denying the licenses. Such an inquiry would necessarily have to include the question of whether Grumman, directly or indirectly, improperly influenced that decision. The answer to that question easily might "embarrass the Executive Branch of our Government in the conduct of our foreign relations."

*Id.* 333 (citing *Alfred Dunhill of London v. Republic of Cuba*, 425 U.S. 682, 697, 96 S.Ct. 1854, 1862, 48 L.Ed.2d 301 (1976)). *See also Northrop Corp. v. McDonnell Douglas Corp.*, 498 F.Supp. 1112 (C.D.Ca.1980); *General Aircraft Corp. v. Air America, Inc.*, 482 F.Supp. 3 (D.D.C.1979).

These cases all involved suits in which the plaintiffs had been harmed in some fashion by the acts of foreign states. The Court has already held, however, that the obvious factual differences between those cases and this one do not make the act of state doctrine as such inapplicable here. Rather, the case's resolution depends upon the policies underlying the act of state doctrine. 548 F.Supp. at 1382. And cases such as *Buttes Gas & Oil Co. v. Hammer*, [1981] 3 W.L.R. 787 (House of Lords), further persuade the Court that the act of state doctrine may be applied to libel suits, despite the "inversion" of parties that exists in such cases. *See DeRoburt v. Gannett*, 548 F.Supp. at 1383.

■ The Court is also convinced that the act of state doctrine bars examination into the *motivation* of foreign acts of state as well as into the *validity* of those acts.

■ Based upon these principles, the Court finds that, although DeRoburt attempts to excise from his complaint any allegations that challenge Gannett's characterization of the 1978 loan, the Court (or jury) would still be forced to decide how and, by implication, why the government of Nauru loaned $A600,000 [Australian dollars] to the Marshall Islands in 1978.

This is not a simple misidentification case, as DeRoburt contends, in which *A* is reported to have committed the crime perpetrated in fact by *B*. Here, the plaintiff is a high-ranking government official and head of state, while the act of state involved was a loan by the government of Nauru. Although DeRoburt has sued in his individual capacity, he was reported to have acted in his official capacity. Moreover, the heart of the defamation alleged is that the improper motives attributed to the loan were imputed to DeRoburt by association. Yet governments are not people. They are of people. Governments cannot have improper motives, only the people who constitute governments can. The articles in question named DeRoburt as a prime mover behind the 1978 loan. Thus, his motives were also being imputed to the government of Nauru. Whether DeRoburt was a party to the loan or not therefore unavoidably implicates the motivation of the government of Nauru. To explore judicially whether DeRoburt was involved in the loan, and perhaps find that he was, would inevitably cast a shadow of innuendo across the reputation of the Republic of Nauru.

Also, in a sense, the proposed fourth amended complaint raises more intractable act of state difficulties than the dismissed complaint, for here there is no attempt to vindicate the 1978 loan—DeRoburt virtually concedes that the loan *was* illegal, secret and improper. Compare *Frazier v. Foreign Bondholders Protective Council*, 283 App. Div. 44, 125 N.Y.S.2d 900, 905 (1953), in which the court said: "Perhaps our courts should be even more sensitive to the involvement of a sovereign's action when the

sovereign is not a party to the action, and the adjudication as it affects its prestige and dignity partakes of the nature of an ex parte proceeding."

As in its earlier order, the Court looks to a possible verdict in favor of the defendant as a gauge. 548 F.Supp. at 1383–1384. Under DeRoburt's proposed amended complaint, a verdict for the defendant would be tantamount to a declaration that the current head of state of a sovereign republic instigated, arranged and delivered an illegal, improper and secret loan to another sovereign entity. The ramifications on this country's foreign policy and on the relation between the Judicial and Executive Branches would be the same as before. This the Court cannot allow.[1]

■ The Court may deny leave to amend when the proposed amendment would not cure the infirmity of the dismissed complaint.[2] 3 J. Moore, *Moore's Federal Practice* ¶ 15.10 (2d ed. 1982). The Court finds that the proposed amendment in this case would be futile.

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that the plaintiff's Motion for Leave to File Amended Complaint is DENIED. For the reasons stated herein, IT IS FURTHER ORDERED AND ADJUDGED that plaintiff's Motion to Reconsider Order and Vacate Judgment is also DENIED.

---

1. Again, nothing in the act of state doctrine prevents the plaintiff from seeking relief in the courts of his own country.

2. Gannett has offered several other grounds in opposition to DeRoburt's motions, but owing to the Court's disposition herein, they will not be addressed.