Louis J. Capozzoli, J.
This action was brought under subdivision 1 of section 977-b of the Civil Practice Act by the plaintiffs, as creditors, for the appointment of a permanent receiver of the defendant’s assets within the State of New York on the ground that the defendant was nationalized within the meaning of the afore-mentioned section.
The action was commenced by the entry of an ex parte order on May 3, 1952, appointing receivers of the defendant’s New York assets. On May 12, 1952, an order was entered directing the various banks in the State of New York to show cause why they should not be examined in aid of the temporary receivership as to the assets of the defendant and of its alleged successor, State Bank of Czechoslovakia. This order contained a provision restraining the several banks from disposing of the assets of the defendant and of its alleged successor. On May 21, 1952, the restraining provision as to the State Bank of Czechoslovakia was modified so as to limit same only as to such assets of that bank as the domestic banks had on hand when the original restraining order was served upon them.
The defendant appeared in the action and filed an answer to the complaint. Many substantive questions of law and fact have been raised in the course of this proceeding. The State Bank of Czechoslovakia, although not a party to the action, filed a claim of immunity as to its property affected by the restraining order of May 12, 1952, on the ground that it was an instrumentality of the sovereign State of Czechoslovakia.
Because of the many and complicated issues involved, Mr. Justice Irving L. Levey, of this court, before whom the case came up originally, assigned the entire case to a Referee to hear and fully report. In all, 10 definite items of inquiry were agreed upon and, after many hearings, the Referee filed a report on July 20, 1954, consisting of 77 pages, Mr. Justice Levey confirmed the report of the Referee in all respects except for the findings, one: nationalization, and two: plaintiffs ’ standing as creditors. (31 Misc 2d 45).
As to the second exception, Mr. Justice Levey did not confirm the findings of the Referee because, since the filing of the *12 Referee’s report, and on the 5th day of January, 1955, the International Monetary Fund issued a release to the effect that Czechoslovakia was no longer a member. This being so, Mr. Justice Levey held that Czechoslovakia could not claim the benefit of the privileges extended to members of the fund, one of which was the exemption of a member nation from any court action in the territory of another member nation, under certain conditions which the Referee found were present in the case before him. Therefore, Mr. Justice Levey ruled that the plaintiffs’ standing as creditors was not affected by the then status of Czechoslovakia in relation to the International Monetary Fund.
As to the first exception, that of nationalization, Mr. Justice Levey reviewed briefly the reasons for the enactment of section 977-b of the Civil Practice Act and referred to a number of cases decided before and after the enactment of said section. He concluded as follows (p. 46):
“ Defendant, conceivably, may still be in a position to meet its obligations to stockholders and creditors, but in the face of the facts now available, it should bear the burden of showing both its capacity and willingness to meet its responsibilities. At least, more information is essential as to current conditions.
“ Hence, the findings of the Referee are modified to the extent of ordering a trial of this issue at an early date, in accordance with subdivision 9 of section 977-b of the Civil Practice Act.”
The order of Mr. Justice Levey was affirmed by the Appellate Division (286 App. Div. 999).
Therefore, this court has limited the trial before it to the issue of nationalization, with a consideration of whether the defendant has the capacity and willingness to meet its responsibilities to stockholders and creditors, as provided by Mr. Justice Levey. This court will not consider anything else. Whatever has been heretofore decided will not he reviewed by this court despite the contention of the defendant.
This court does not agree that only a portion of the issue of nationalization is before it. It is of the opinion that the entire issue of nationalization is open. It believes further that, under the order of Mr. Justice Levey, the burden of going forward with proof on the capacity and willingness of the defendant to meet its responsibilities is upon the defendant, but the ultimate burden of proof on the entire issue of nationalization is upon the plaintiffs. In other words, the plaintiffs must establish, by a fair preponderance of evidence, that the defendant bank was nationalized, as set forth in subdivision 1 of section 977-b of the Civil Practice Act.
*13 At the trial before this court the defendant read into the record lengthy depositions of Dr. Jaraslav Fukatko, the chairman of the board of directors of the defendant, and Ivan Petr, the manager. These depositions were taken in the Peoples’ Court of Prague, Czechoslovakia. The testimony was offered to support the contention of the defendant that it has the capacity and the willingness to meet its responsibilities, that it has not been nationalized within the meaning of the Civil Practice Act and that it is actually doing business.
The testimony of these witnesses is entirely unsatisfactory. They were unable to produce a balance sheet, book entries, financial statements or any factual proof bearing upon the activities of the defendant and its assets and liabilities. They refused to give certain other information without permission of government authorities, yet they repeatedly asserted that the defendant is doing business and there has been no order issued by the Czechoslovak government terminating its existence.
At this point the court invites attention to plaintiffs ’ ‘1 Exhibit 1 ” in evidence. This exhibit is a copy of Law No. 31 of 1950, enacted by the National Assembly of the Czechoslovak Republic on the 9th day of March, 1950. Article 2 of this law provides as follows:
“ (1) The Bank shall take over gradually, according to the instructions of the Ministry of Finance, all rights and obligations of the * * * 2. Zivonstenka Banka National Corporation * * *.
“ (2) The institutions mentioned in paragraph (1) shall end their activities by transferring to the Bank their rights and obligations, and shall cease to exist on a day to be determined by the Minister of Finance in a Notice to be published in the Collection of Laws.”
The wording of the last-mentioned exhibit forces the conclusion that the defendant shall end its activities by a gradual transferring over of its rights and obligations and shall cease to exist on a day determined by the Minister of Finance, in a notice published in the Collection of Laws.
The question, therefore, is presented, as to whether the defendant is still doing business or is it out of business and no longer in existence. In this connection it is important to know whether the Minister of Finance ever issued the notice referred to in plaintiffs’ “Exhibit 1”. The defendant’s witnesses, in their depositions, repeatedly stated that such notice was never issued by the Ministry, nor was its issuance contemplated.
"WThen an examination is made of plaintiffs’ “ Exhibit 2 ”, in evidence, and its contents read, it is difficult to understand the *14 attitude and the testimony of these witnesses. Plaintiffs’ ‘ ‘ Exhibit 2 ” is entitled “ Proclamation or Notice No. 383 of the Ministry of Finance, of June 17th, 1950 ” and it provides, amongst other things, as follows:
“ The Finance Ministry hereby publishes the following notice of instructions, pursuant to Article 2, subd. 1 of the Law No. 31 of 1950 of the Collection of Laws, concerning the State Bank of Czechoslovakia.
“ (1) On the 3rd day of July, 1950, the State Bank of Czechoslovakia shall take over, besides the rights and liabilities listed in paragraph 2 and 3 hereof, all the rights and liabilities of * * * the Zivnostenka Banka National Enterprise, * * # as of the state of business at the end of the second planning quarter of 1950, i.e. as of the 2nd day of July, 1950, e.g. their cash on hand, securities and coupons, bills of exchange and checks.”
It is true that the publication of this notice, plaintiffs’ ‘1 Exhibit 2 ’ ’, was made in the official Gazette of the Republic of Czechoslovakia, rather than in the so-called Collection of Laws. But this is immaterial. What is important is the fact that the Ministry of Finance did exercise the authority granted to it by plaintiffs’ “ Exhibit 1 ”, which resulted in the issuance of plaintiffs ’ 1 ‘ Exhibit 2 ’ ’. Surely, if there is any explanation for plaintiffs’ “ Exhibit 2 ” it should come from the defendant. But the record is silent as to any references to this exhibit by any of the witnesses of the defendant. Should not the chairman of the board have known that such an order of the Finance Ministry had been issued and should he not have given some explanation about it instead of denying that such an order was ever issued?
Since plaintiffs ’ ‘ ‘ Exhibit 1 ’ ’ says that defendant ‘ ‘ shall cease to exist on a day to be determined by the Minister of Finance in a notice published in the Collection of Laws,” and since such notice was published by the Ministry on June 17, 1950, plaintiffs’ “ Exhibit 2 ”, how can the defendant’s witnesses continue to testify, under oath, that no such notice mentioned in plaintiffs ’ 1 ‘ Exhibit 1 ’ ’ was ever issued or being contemplated and that the defendant is still doing business without any interference from the government? The conclusion is irresistible that the defendant has ceased to do business, it no longer exists and that it has not the capacity or willingness to meet its responsibilities to stockholders and creditors.
When it is further considered that the defendant seeks to justify the nonpayment of the claims of the plaintiffs on the ground that their property was confiscated by government *15 decree, resulting from their adjudication as enemies of the state, certainly the courts of this jurisdiction should apply the provisions of section 977-b of the Civil Practice Act, which to this court seem to be aptly applicable to the factual situation at bar. (Bata v. Bata, 285 App. Div. 1050.)
The application of the plaintiffs for an extra allowance is not being considered at this time. It should be made at the time of the settlement of the receiver’s account, in accordance with section 977-b (subd. 16, par. a.) of the Civil Practice Act.
This court agrees with the defendant that the complaint as to the plaintiff, John A. Stephen, should be dismissed on the strength of the finding by the Referee, confirmed by Mr. Justice Levey, that the plaintiff, John A. Stephen, was barred from maintaining this action by the three-year Statute of Limitations contained in subdivision 23 of section 977-b of the Civil Practice Act.
For the reasons above stated the court finds that the defendant has been nationalized under subdivision 1 of section 977-b of the Civil Practice Act and that the receivership be made permanent as to the plaintiff, Otto Augstein. The complaint is dismissed as to the plaintiff, John A. Stephen.