Vincent A. Lupiano, J.
This is an application made by the defendant, Zivnostenska Banka, for an order modifying the restraining provisions contained in the judgment entered on August 6, 1956, and contained in the orders of this court dated May 12, and May 21, 1952 and July 1, 1958, and of all other orders made by this court wherein property within the State of New York, held by various financial institutions was restrained from transfer or delivery by said institutions and to vacate such restraining provisions with respect to the property of the Republic of Czechoslovakia to be certified as such by the United States Attorney at the direction of the Attorney General of the United States. The personal property is held in the name of the defendant and the State Bank of Czechoslovakia (hereinafter called Statni Banka). Modifications sought so as to eliminate the restraint with respect to property for which a ‘1 Suggestion of Immunity ’ ’ was allowed by the United States Government on behalf of the Republic of Czechoslovakia. Plaintiff, a creditor of defendant originally sought this action, pursuant to section 977-b of the Civil Practice Act, for the appointment of a permanent receiver of the assets of the defendant, within the State of New York. The complaint was predicated upon the ground that the defendant had been nationalized by decree of the Republic of Czechoslovakia, dated October 24, 1945.
Judgment was granted in favor of plaintiff on August 6, 1956 and the permanent receiver appointed thereunder.
The judgment in part provided as follows:
‘ ‘ 1. That the plaintiff, Otto Augstein, have judgment against the defendant, Zivnostenska Banka, National Corporation, also known as Zivnostenska Bank, National Corporation, formerly Zivnostenska Banka or Zivnostenska Bank, for the relief demanded in the complaint herein, to the extent warranted by the provisions of section 977-b of the Civil Practice Act.
“ 2. That the defendant, Zivnostenska Banka, National Corporation, pursuant to decree No. 102 of the Republic of Czechoslovakia, its Law No. 31 of 1950 and Proclamation No. 383 of its Ministry of Finance, was nationalized within the meaning and contemplation of section 977-b of the Civil Practice Act; has ceased to do business; no longer exists; and it has not the *857 capacity or willingness to meet its obligations and responsibilities to its creditors and stockholders.
# # #
“4. That said Receivers be, and they hereby are directed to take, receive and reduce to their possession, and to liquidate and reduce to cash, any and all assets, credits, choses in action and other property, tangible and intangible, within the State of New York of the defendant Zivnostenska Banka, National Corporation ’ ’.
The judgment further provided that the restraining provisions in the orders of May 3, May 12 and May 21, 1952 were continued in force and effect and injunction was extended to cash deposits and securities held by the financial institutions in the name of the Statni Banka.
The judgment was affirmed by the Court of Appeals (3 N Y 2d 862). Upon application by defendant the remittitur was amended by adding thereto the following: “Upon the appeal herein there was presented and necessarily passed upon a question under the Constitution of the United States, viz.: Defendant argued that section 977-b of the New York Civil Practice Act and the appointment of a receiver pursuant thereto were in violation of established principles of constitutional law and in conflict with the foreign policy of the United States. This court held that there was no such violation or conflict.” (3 N Y 2d 931.)
Defendant then appealed to the Supreme Court of the United States. The appeal was dismissed “ for want of a substantial federal question.” (356 U. S. 22.)
This application is based upon a suggestion of immunity, filed by the Department of State of the United States, through the offices of the United States Attorney for the Southern District of New York. The suggestion states in part that the Secretary of State ‘ ‘ accepts as true the statement of fact of the Czechoslovak Government that the listed cash and securities constitute the property of the State of Czechoslovakia and that consequently the United States Government recognizes and allows the claims of the Czechoslovak Government that such property in the United States is immune from execution or other action analogous to execution.” The United States Government does not intervene as an interested party but presents the suggestion of immunity as a matter of comity between the Government of the United States and the Government of Czechoslovakia. It is predicated upon notes dated January 22, *858 and June 16, 1959 from the Ministry of Foreign Affairs of Czechoslovakia and a communication from the State Department of the United States, dated June 22, 1959. The note of June 16, 1959 “ asks that the sovereign immunity of the Czechoslovak State "be recognized with respect to assets on deposit, both in the accounts of the Zivnostenska Banka, a national enterprise, and in accounts of the Statni Banka Czechoslovenska, in various New York banks, blocked by a Decision of the Supreme Court of the State of New York, dated May 12, 1952, and specified in Annexes 1 and 2 of this note, and that the assets be promptly released.” It is claimed by the Czechoslovak Government that the property listed in Annex 1 was acquired by it through the defendant and the property listed in Annex 2 was acquired by it through Statni Banka.
The letter of June 22, 1959 from the State Department of the United States requests the United States Attorney “ to present to the court the views of the Department and also to inform the court that the Department of State accepts as true the statements of fact of the Czechoslovak Government in its note of June 16, 1959, above that the attached securities as listed in Annex 1 and 2 of that note constitute the property of the State of Czechoslovak ”.
On the return date of the application opposing affidavits were submitted. From the affidavit it appears that certain third parties make claim to ownership of some of the very securities to which the Czechoslovak Government now asserts immunity. Moreover, the defendant filed a proof of claim with the receiver on October 7, 1957 in which defendant stated that the “true owners ”, of certain of the securities listed thereon, were persons other than Statni Banka. Now, however, the ownership of such securities is asserted to be in the Czechoslovak Government.
Thereafter, an affidavit made by an Assistant United States Attorney was filed with this court. Attached to that affidavit is a photostatic copy of a letter dated December 15, 1959, written by the Assistant Legal Adviser of the State Department of the United States to the Chief, General Litigation Section of the Department of Justice. The pertinent part of that letter reads as follows: “As Mr. Evan was advised on a recent visit to this office, the suggestion of immunity filed in the Zivnostenska Banka case by the United States Attorney at the instance of the Department of State was not intended to be a determination by the Department of any controversy between his client and the Government of Czechoslovakia as to the ownership of any securities involved in the case or to deprive *859 his client of the opportunity of establishing ownership of any securities. It follows that the Department had no intention of suggesting that any property not owned by the Government of Czechoslovakia was immune from execution or from proper disposition by the Court.” (Italics mine.)
It may very well be that the Czechoslovak Government acquired title to the listed securities through nationalization. However, this acquisition is opposed in part by “ true owners ” and wholly by the receiver who has title to the property of the defendant in the State of New York, pursuant to subdivision 19 of section 977-b of the Civil Practice Act, subject, of course, to true ownership.
Nationalization decrees of foreign governments are repugnant to the public policy of the State of New York. (Vladikavkazsky R. R. Co. v. New York Trust Co., 263 N. Y. 369.) These decrees are not given extra-territorial effect over assets which have their situs in the State of New York. (United States v. President & Directors of the Manhattan Co., 276 N. Y. 396; Civ. Prac. Act, § 977-b, subd. 19.)
The constitutionality of section 977-b of the Civil Practice Act is beyond dispute. (Stephen v. Zivnostenska Banka, supra; Oliner v. American-Oriental Banking Corp., 252 App. Div. 212, affd. 277 N. Y. 588.)
In support of its position the movant relies upon the case of Compania Espanola v. Navemar (303 U. S. 68); Lamont v. Travelers Ins. Co. (281 N. Y. 362); Matter of United States of Mexico v. Schmuck (293 N. Y. 264); Ex parte Republic of Peru (318 U. S. 578) and other authorities. These cases are not apposite of the situation presented here.
In National City Bank v. Bepublic of China (348 U. S. 356, 358-359) the court said: “It (immunity) has become such solely through adjudications of this Court. Unlike the special position accorded our States as party defendants by the Eleventh Amendment, the privileged position of a foreign state is not an explicit command of the Constitution. It rests on considerations of policy given legal sanction by this Court.”
In New York & Cuba Mail S. S. Co. v. Republic of Korea (132 F. Supp. 684, 686) the court uttered the following: “It must be recognized that primarily the claim of a foreign sovereign of immunity from suit or process presents a political rather than a judicial question. This is necessarily so, for dealings between our own and a friendly foreign government are carried on through diplomatic channels by those officials to whom the matters are committed. Lest an untoward incident disturb amicable relations between the two sovereigns, it has *860 long been established that the court’s proper function is to enforce the political decisions of our Department of State on such matters. This course entails no abrogation of judicial power; it is a self-imposed restraint to avoid embarrassment of the executive in the conduct of foreign affairs.”
And, it is true, as the court pointed out in Compania Espanola v. Navemar (supra, p. 74) that a foreign government may claim immunity from suit either in the court or through diplomatic channels and if the claim is recognized and allowed by the executive branch of the government, it is then the duty of the courts to accept the claim of immunity upon appropriate suggestion by the Attorney General of the United States or other officer acting under his direction. Yet, none of the cases cited involved the nationalization contemplated and interdicted by section 977-b of the Civil Practice Act. In any event, here, it appears by the photostatic copy of the letter dated December 15, 1959, that there is clear indication that the executive branch of our Government does not absolutely recognize and allow the claim of the Government of Czechoslovakia, as to its ownership of property listed in the suggestion of immunity, but rather leaves the matter “ for proper disposition by the court.” This, it seems to me, presents a judicial rather than a political question. In Lamont v. Travelers Ins. Co. (281 N. Y. 362, 373) the Court of Appeals said: “No issue is raised merely by suggestion of a government which refuses to intervene and to present proof to sustain its allegations; and immunity from suit exists only where the object of the suit is to enforce a claim or right against the foreign government or its property. The mere assertion by a foreign government, without proof that property which is the subject of controversy between the parties here belongs to the government, does not constrain the court to refuse jurisdiction of that property.” (Italics mine.)
The court realizes the seriousness and duty of recognizing any suggestion of immunity. Nevertheless, where contravening ownership is shown, the suggestion made, as in this instance will be viewed and confined within the orbit of property, which, in fact, belongs to the foreign nation. And where circumstances indicate different ownership, further serious and important duty devolves upon the court; that is, to explore the area of true ownership, which, if not done, would defeat such ownership. By doing this, both duties are performed compatibly and in good constitutional manner. To act differently, under the circumstances, here, would be a transgression of the basic and fundamental rights preserved under our Federal and State Constitutions.
*861 Accordingly, the court is constrained to deny the motion. However, leave is granted to the Government of Czechoslovakia, if it be so advised, to appear before the Referee heretofore appointed by order of this court dated July 1, 1958, who shall take proof of the ownership of the assets as claimed by the Czechoslovak Government in this application and report to this court.
Settle order upon which the court shall entertain suggestions as to the date of the hearing.