JOHN A. STEPHEN, Formerly Known as HANS AUGSTEIN, Plaintiff, and OTTO AUGSTEIN, Respondent, *v.* ZIVNOSTENSKA BANKA, NATIONAL CORPORATION, Also Known as ZIVNOSTENSKA BANKA, NATIONAL CORPORATION, Formerly ZIVNOSTENSKA BANKA or ZIVNOSTENSKA BANK, Appellant, EDWIN B. WOLCHOK, as Receiver, Respondent.

First Department, December 12, 1961.

*Lemuel Skidmore* of counsel (*Howard F. Ordman* with him on the brief; *Putney, Twombly, Hall & Skidmore,* attorneys), for appellant.

*Sigmund Timberg* of counsel (*Alexander Slater* and *Abraham Wolf,* attorneys), for Edwin B. Wolchok, respondent.

*Nicholas R. Doman* of counsel (*Doman & Ablondi,* attorneys), for Otto Augstein, respondent.

McNALLY, J. The question presented is the legal effect of the suggestion of sovereign immunity dated June 26, 1959 and letters amendatory thereto on the judgment herein entered August 6, 1956.

The action is grounded on section 977-b of the Civil Practice Act which expresses and implements the public policy of the State of New York not to enforce foreign confiscatory decrees as to property within the State. (*Bollack* v. *Societe Generale,* 263 App. Div. 601.) The judgment in favor of plaintiff Otto Augstein and against defendant Zivnostenska Banka, National Corporation (herein designated Zivno Banka, N. C.), successor of Zivnostenska Banka, decrees that Zivno Banka, N. C. was nationalized within the meaning of section 977-b, has ceased to function and exist, and is incapable of meeting its obligations; it appoints permanent receivers of defendant's assets within the State of New York, provides for the marshaling of its assets, the presentation of claims, the adjudication thereof, the submission of the receivers' account and the settlement thereof on notice. The complaint was dismissed as to plaintiff John A. Stephen by reason of the limitation of subdivision 23 of section 977-b.

Defendant was organized in Prague, Czechoslovakia, in 1869. It was licensed to transact business within this State on May 18, 1948. The license expired March 20, 1949 and was not renewed. Prior to 1948 the defendant was a stock corporation. Decree No. 102 of October 24, 1945 of the President of the Republic of Czechoslovakia nationalized its banks; it provided for but there is no proof of compensation to stockholders. On August 5, 1948 Zivno Banka, N. C. was registered on the records of the Commercial Register, District Civil Court in Prague, as an enterprise for domestic and foreign banking and exchange and other transactions as provided by regulations and orders, especially with respect to the requirements of the planned economy of Czechoslovakia; the owner was stated to be Czechoslovak State consequent on Decree No. 102 of 1945. Law No. 31 of 1950 of Czechoslovakia established Statni Banka Ceskoslovenska (herein designated Statni Bank), merged therein four banks including the defendant, and provided for the assumption by Statni Bank of the rights and obligations of the constituent banks.

Plaintiff Augstein is a native of Czechoslovakia. He lived there until 1939 when he emigrated to England and thence in 1940 to Canada where he became a citizen in 1945. Prior to

1939 Augstein was and since has been a depositor of and by reason thereof a substantial creditor of the defendant.

On May 3, 1952 an order was made appointing temporary receivers of the defendant and its property. On May 12, 1952 various banks and Kidder, Peabody & Co. were restrained from transferring property of the defendant and Statni Bank and directed to appear for examination concerning the defendant's property. On May 21, 1952 the restraining order of May 12, 1952 was limited to the property in the hands of the depositories at the time of its service.

On May 26, 1952 the Charge d'Affaires ad interim of Czechoslovakia represented to the Department of State that Statni Bank is an organ of the Czechoslovak Government, enjoys sovereign immunity and is unwilling to subject itself or its property to the jurisdiction of the Supreme Court of the State of New York. The Department of State on June 4, 1952 requested the Attorney General to instruct the appropriate United States Attorney to " present to the court without argument or comment the position of the Government of Czechoslovakia as set forth in the note ". Prior thereto, on May 19, 1952, the Department of State made a statement of policy regarding the practice of the Government of the United States in granting immunity from suit to foreign governments made parties defendant in the courts of the United States without their consent. (Tate Letter, 26 Dept. of State Bull., June 23, 1952, pp. 984–985; see *National Bank* v. *Republic of China,* 348 U. S. 356, 361.) It noted the conflicting concepts of sovereign immunity represented by the classical or absolute theory and the restrictive theory whereby immunity is limited to sovereign or public acts (*jure imperii*) and not recognized as to private acts (*jure gestionis*). The statement concludes: " Finally, the Department feels that the widespread and increasing practice on the part of governments of engaging in commercial activities makes necessary a practice which will enable persons doing business with them to have their rights determined in the courts. For these reasons it will hereafter be the Department's policy to follow the restrictive theory of sovereign immunity in the consideration of requests of foreign governments for a grant of sovereign immunity."

The request of the Department of State of June 4, 1952 was consistent with the policy defined in the Tate Letter.

The note of the Czechoslovak Government dated May 26, 1952 did not suggest immunity as to the defendant. On the contrary it affirmed: " The two above-named plaintiffs instituted an action against Zivnostenska banka, national corporation [the

defendant], which immediately took steps to appear in the action and will doubtless be able to repudiate the unjustified and unfounded claims raised by the plaintiffs.'' The request for immunity was limited to Statni Bank and its property.

Defendant served its answer on June 23, 1952 and its amended answer on April 20, 1953. The amended answer alleged as a first defense that defendant is an agent and instrumentality of the Republic of Czechoslovakia and shares its immunity, and as a second defense the six-year Statute of Limitations.

On the hearing of the motion to examine the various depositories, numerous issues, including the defendant's claim of immunity, were presented and referred by order dated October 24, 1952 to a Referee to hear and report. The said issues, by consent, included: (1) whether plaintiff Augstein is a creditor of the defendant; (2) whether defendant was nationalized; (3) whether defendant has property in the State of New York; (4) the defense of the Statute of Limitations; (5) the issue of sovereign immunity of defendant and Statni Bank; and (6) the exemption of certain of the seized securities from the seizure in this proceeding. The report of the Referee filed July 21, 1954 resolved the issues in favor of the plaintiff, except as to nationalization of the defendant and plaintiff's status as a creditor. The order entered March 25, 1955 modified said report to the extent of finding the plaintiff to be a creditor of the defendant, confirming it otherwise, and set the cause for trial on April 25, 1955 (31 Misc 2d 45, affd. 286 App. Div. 999). The cause was tried and resulted in the determination that the defendant was nationalized within the meaning of section 977-b. Final judgment was thereon entered on August 6, 1956 (31 Misc 2d 10, affd. 2 A D 2d 958, affd. 3 N Y 2d 862, appeal dismissed 356 U. S. 22).

On July 1, 1958 an order was made appointing a Referee to hear and report on the defendant's property and directing the depositories to submit to examination concerning property held by them in the names of the defendant and Statni Bank. On March 24, 1959 the receiver of the defendant commenced an action (herein designated Statni Action) to set aside transfers of property from the defendant to Statni Bank pursuant to Law No. 31 of 1950 of Czechoslovakia alleged to be in fraud of defendant's creditors. On March 26, 1959 an order was made in this action extending the receivership to the Statni Action.

In January, 1959 the Ministry of Foreign Affairs of Czechoslovakia requested the United States Government to effect the release of certain assets in the hands of the described depositories subject to the restraint of the order of May 12, 1952, and

continued in the judgment herein entered August 6, 1956. The said request was premised on the claim that the said assets are property of the Czechoslovak State. The request for release was limited by the note of the Ministry of Foreign Affairs dated June 16, 1959 to blocked assets of the Czechoslovak State, more particularly described in Annexes 1 and 2 thereof.

On June 22, 1959 the Attorney General was requested by the Department of State " to present to the court the views of the Department and also to inform the court that the Department of State accepts as true the statements of fact of the Czechoslovak Government in its note of June 16, 1959, above that the attached securities as listed in Annexes 1 and 2 of that note constitute the property of the State of Czechoslovakia. Consequently, the United States Government recognizes and allows the claim of the Czechoslovak Government that such property in the United States is immune from execution or other action analogous to execution."

The Department of State communication of June 22, 1959 states that the property affected by the claim of immunity is part of the securities and deposits subject to the order of May 12, 1952, which fall into three categories: (1) those in the name of and owned by the defendant; (2) those in the name of the defendant " which it claims it holds as custodian for private individuals "; and (3) those " deposited in the names of the Statni Banka Ceskoslovenska and Zivnostenska Banka, which the Czechoslovak Government claims to be its property ". The property falling into category (3) is listed in the two annexes to the Czechoslovak Government note. It is with regard to these securities and deposits that the Czechoslovak Government has asked for foreign sovereign immunity and that they be released from the attachment.

The communication of the Department of State of June 22, 1959 with reference to this action also states:

" The defendant Zivnostenska Banka appeared in the proceedings. The Statni Banka Ceskoslovenska, although not a party to the proceedings, appeared as *amicus curiæ* and filed a claim of immunity as to its property affected by the above restraining order.

" In a note dated May 26, 1952, from the Chargé d'Affaires *ad interim* of Czechoslovakia, The Czechoslovak Government stated that the Statni Banka Ceskoslovenska, as a governmental organ, enjoyed sovereign immunity, and asked that its attached property be released.

" The Department's letter of June 4, 1952, requested you to instruct the appropriate United States Attorney to appear

before the New York Supreme Court, County of New York, to present to the court without argument or comment the position of the Government of Czechoslovakia as set forth in its above note of May 26, 1952, as a matter of comity.

\* \* \*

" The Department is of the view that, in international law under the restrictive rule of sovereign immunity there is no immunity from jurisdiction regarding the private activities (*jure gestionis*) of a foreign sovereign. Since the Zivno Bank was engaged in commercial activities it was appropriate for the court to retain jurisdiction to arrive at a judgment after a hearing on the merits of the plaintiffs' claims.

" However, the Department has always recognized a distinction between ' immunity from jurisdiction' and ' immunity from execution'. The Department has maintained the view that in accordance with international law property of a foreign sovereign is immune from execution to satisfy even a judgment obtained in an action against a foreign sovereign where there is no immunity from suit.

" As you will recall there is precedent for not permitting execution of a judgment obtained in a proceeding when the foreign sovereign has consented to suit. *Dexter and Carpenter, Inc.* v. *Kunglig Jarnvagsstyrelsen,* 43 F. 2d 705 (2d Cir., 1930) cert. den. 282 U. S. 896 (1931); followed in *Bradford* v. *Chase National Bank,* 24 F. Supp. 28, 38 (D. C. S. D. N. Y. 1938), affd., *sub nom. Berger et al.* v. *Chase National Bank,* 105 F. 2d 1001 (2d Cir., 1939), 309 U. S. 632 (1940).

" The Department is of the further view that, where under international law a foreign government is not immune from suit, attachment of its property for the purpose of obtaining jurisdiction is not prohibited. In many cases jurisdiction could probably not be obtained otherwise. But property so attached to obtain jurisdiction over the defendant government cannot be retained to satisfy a judgment ensuing from the suit because in accordance with international law the property of a foreign sovereign is immune from execution even in a case where the foreign sovereign is not immune from suit."

The suggestion of immunity dated June 26, 1959 submitted to the Supreme Court of the State of New York, County of New York, by the United States Attorney for the Southern District reads, in part:

" The letter from the Secretary of State to the Attorney General of the United States (Exhibit ' A ') accepts as true the statement of fact of the Czechoslovak Government that the listed cash and securities constitute the property of the State

of Czechoslovakia and that consequently the United States Government recognizes and allows the claim of the Czechoslovak Government that such property in the United States is immune from execution or other action analogous to execution.

"In compliance with the request of the Secretary of State of the United States and the Attorney General of the United States, it is respectfully requested that these facts be considered by this Court.

"In bringing this matter to the attention of the Court, the United States does not intervene as an interested party, but the undersigned presents this Suggestion of Immunity as a matter of comity between the Government of the United States and the Government of Czechoslovakia, and suggests that the claim of immunity made on behalf of the said Czechoslovak Government and recognized and allowed by the Department of State be given full force and effect and that the property heretofore seized pursuant to order of this Court be released and held to be immune from execution or proceedings analogous to execution."

No claim or suggestion of immunity is made in regard to the defendant Zivno Banka, N. C. or the property in the first category. The said defendant's property falls within the first of the three categories described in the communication of the Department of State dated June 22, 1959, and the suggestion of immunity relates only to the third category.

Upon being advised of the action of the Department of State, the defendant, by notice of motion dated June 22, 1959, moved to modify the judgment of August 6, 1956, the order of May 12, 1952, and orders incidental thereto, to vacate the restraining provisions thereof affecting property of the Republic of Czechoslovakia. On the hearing of said motion there were submitted to the court the representations of the Republic of Czechoslovakia, the request of the Department of State and the suggestion of immunity aforesaid. In addition, there was submitted to the court a letter of the Department of State dated December 15, 1959 which, in part, states:

"As Mr. Evan was advised on a recent visit to this office, the suggestion of immunity filed in the Zivnostenska Banka case by the United States Attorney at the instance of the Department of State was not intended to be a determination by the Department of any controversy between his client and the Government of Czechoslovakia as to the ownership of any securities involved in the case or to deprive his client of the opportunity of establishing ownership of any securities. It follows that the Department had no intention of suggesting that any property

not owned by the Government of Czechoslovakia was immune from execution or from proper disposition by the Court.

"In order that the Department's position may be clear, it is requested that the United States Attorney for the Southern District of New York be instructed to appear at the hearing which, it is understood from Mr. Evan's letter, is to be held on December 16, 1959, before the referee appointed in this case and make known the Department's position, if necessary, by filing a copy of this letter as a part of the record."

The order entered April 13, 1960 denied the motion to modify the judgment herein and the said orders. Thereafter, by order to show cause dated May 12, 1960, the defendant moved for reargument. On the reargument there was submitted to the court a copy of the letter of the Department of State dated May 12, 1960 addressed to the Assistant Attorney General which states, in part:

"The Department's letter of December 15, 1959, referred to by the Court should be read in the light of the Department's previous letter of June 22, 1959, and of the particular situation to which it was addressed. The December letter meant only that if Mr. Gellert or any other claimant in the case could prove to the Court that specific property listed by the Czechoslovak Government in the Annexes to its note as property of the State actually belonged to him as a matter of Czechoslovak law rather than to the Czechoslovak State because, for instance, the particular law in question was not intended to apply to the property or because he had complied with the necessary legal requirements to recover the property, then the sovereign immunity of the Czechoslovak State did not extend to such property. It did not mean that the Czechoslovak Government could be required to prove in Court its ownership of property to which its claim had already been recognized and allowed by the Department of State.

"It should be noted in connection with the foregoing that the Governments of the United States and of Czechoslovakia are in the concluding phase of negotiations for the settlement of claims arising out of the nationalization by Czechoslovakia of property of American citizens who were such at the time their property was nationalized. The position of the Czechoslovak Government is that the lump sum now agreed upon in principle in settlement of such claims will be reduced pro tanto by the market value of those properties deposited in accounts of Zivnostenska Banka and Statni Banka and attached or sequestered in judicial proceedings, as to which sovereign immunity is suggested, but which are not released. It appears,

therefore, that an amount equivalent to the value of any such property as to which sovereign immunity is not recognized would not become available for distribution to persons who were United States citizens at the time of the nationalization of their property by Czechoslovakia, or in other words, those citizens whose claims are normally espoused by the United States in accordance with customary international law.''

The motion to reargue, on consent, was deemed one to renew the motion to modify the judgment herein and the restraining orders, and denied by order entered March 16, 1961, which together with the order denying the said motion are the subject of this consolidated appeal.

It has been conclusively determined in this action that the defendant and its property are not within the ambit of the sovereign immunity of the Republic of Czechoslovakia. The suggestion of immunity herein does not purport to recognize the right of immunity on the part of the defendant or in respect of its property. It is, therefore, indisputable that the judgment and the restraining orders are operative as to all property of the defendant in the custody of the court. In this action, as in the companion action by the receiver against Statni Bank, it is sought to establish the ownership by the defendant of the securities and deposits purportedly in the name of Statni Bank allegedly transferred by the defendant to Statni Bank in fraud of creditors. Counsel for Statni Bank on January 30, 1953 conceded before the Referee there were transfers from defendant to Statni Bank. Although counsel for Statni Bank then appeared as *amicus curiæ*, its claim of immunity in respect of the securities and funds then in the custody of the court standing in its name was litigated and determined against it. The instant suggestion of immunity advanced in behalf of the Republic of Czechoslovakia pertains to the same property.

The communication of the Department of State dated June 22, 1959 requesting the Attorney General to submit to the court its suggestion of immunity adverts to *Dexter & Carpenter* v. *Kunglig Jarnvagsstyrelsen* (43 F. 2d 705, cert. denied 282 U. S. 896) and *Bradford* v. *Chase Nat. Bank* (24 F. Supp. 28, 38, affd. *sub nom. Berger* v. *Chase Nat. Bank,* 105 F. 2d 1001, affd. 309 U. S. 632) which vindicate the immunity of the property of a sovereign State from execution after adjudication of its liability. Reliance on the cited authorities serves to emphasize that the Department of State accepts the claim of ownership of the Republic of Czechoslovakia. The department's letter of December 15, 1959 makes clear, however, that it did not assume to determine disputed issues of title in respect of property

claimed by the Government of Czechoslovakia. Ownership of and title to the said property necessarily involves the legal effect and implications of the final judgment herein and the public policy of the State of New York in the light of section 977-b concerning property in the custody of the court. It would not seem that the pendency of negotiations between the Department of State and the Czechoslovak Government with reference to claims of American citizens referred to in the letter of the Department of State of May 12, 1960 is to be equated with a compact or treaty overriding the public policy of the State of New York reflected in section 977-b. (See *United States* v. *Pink*, 315 U. S. 203; *Anderson* v. *N. V. Transandine Handel-maatschappij*, 289 N. Y. 9; *Bollack* v. *Societe Generale*, 263 App. Div. 601.) Moreover, the suggestion of immunity disclaims any interest on the part of the United States.

The adjudication of rights to property in the custody of the court and within its jurisdiction is a judicial function. (*Lamont* v. *Travelers Ins. Co.*, 281 N. Y. 362, 372–373; *Sullivan* v. *State of Sao Paulo*, 122 F. 2d 355, 358; *Banco De Espana* v. *Federal Reserve Bank*, 114 F. 2d 438, 442; see *United States* v. *Bank of New York*, 296 U. S. 463.) In this action defendant has been dealt with as a corporate jural entity, separate and distinct from the Republic of Czechoslovakia. The same holds true of Statni Bank. The suggestion of immunity from execution of the property of the Republic of Czechoslovakia does not avail the defendant and has no application to its property. (See *Hannes* v. *Kingdom of Roumania Monopolies Inst.*, 260 App. Div. 189; *Ulen & Co.* v. *Bank Gospodarstwa Krajowego*, 261 App. Div. 1.) We find that the suggestion of immunity does not preclude judicial determination of title to the assets of the defendant in the custody of the court allegedly transferred in fraud of defendant's creditors to Statni Bank or the Republic of Czechoslovakia. (See *Matter of United States of Mexico* v. *Schmuck*, 294 N. Y. 265.)

*Rich* v. *Naviera Vacuba* (295 F. 2d 24) relied on by appellant is inapposite. There the ownership and possession was of the Republic of Cuba, not, as here, a separate entity, and the suggestion of immunity was advanced prior to any judicial determination; moreover, it appeared the presence of the libeled vessel within the court's jurisdiction was consequent on an act of barratry by the shipmaster.

The orders should be affirmed, with costs to respondents.

STEVENS, J. (dissenting in part). I would modify to release from the restraint property in the third category not claimed

by American citizens or by specific persons as to whom appellant has not by direct act recognized a contrary ownership. As to such specific claimants, they should be permitted to prove that under the law of Czechoslovakia such property actually belongs to them. As to the other property here involved, where there are conflicting claims of title to the assets between the appellant bank and the receiver as representative of the general creditors, such property should be immune from execution, and the restraints heretofore imposed by the judgment and orders appealed from modified to free the property listed in Annexes 1 and 2, subject to the exceptions noted. When the action was instituted originally in 1952 our Government failed to issue a suggestion of immunity. It merely submitted the claim of the Czech Government without argument or comment, and to that extent took no affirmative position. This of course did not bar the Czech Government or its official agent, the Statni Bank, successor to Zivnostenska Bank and into which the Zivnostenska Bank was merged, from appearing and asserting its claim that it was immune from suit. (Cf. *Compania Espanola* v. *Navemar*, 303 U. S. 68.) It is clear that there was jurisdiction in our courts to entertain the suit. When, however, the Department of State elected to act and filed a suggestion of immunity which recognized and allowed the claim of the Czechoslovak Government, the effect of such suggestion is to eliminate the necessity for such government to prove ownership of the property in question, and it imposed a duty upon our courts to hold such property exempt from execution. Moreover, such claims, under these circumstances, as a matter of comity should be given recognition by our court. The suggestion recognizes the sovereignty of Czechoslovakia and should be given retroactive effect as to all assets not specifically identified by individual claimants and whose ownership has been recognized and established. See discussion in *Sokoloff* v. *National City Bank* (239 N. Y. 158). The validity of the Czech law providing for the filing within three years of claims for restitution should not be questioned here insofar as it applies to Czech nationals or those who are not American citizens, particularly where the original debtor-creditor relationship between the Zivnostenska Bank and the depositor was not created here, and that government has now been recognized *de facto* or *de jure* (cf. *Salimoff & Co.* v. *Standard Oil Co.*, 262 N. Y. 220; see, also, 11 Am. Jur., Conflict of Laws, § 6). It is established that the courts of one independent government will not sit in judgment " on the validity of the acts of another done within its own territory." (*Ricaud* v. *American Metal Co.*, 246 U. S. 304; *Oetjen* v. *Central*

*Leather Co.*, 246 U. S. 297; *Underhill* v. *Hernandez*, 168 U. S. 250, 253.) We merely accept the rule when such government is recognized by ours. When a foreign government is recognized "as the *de jure* government of the country in which it is established, such recognition is retroactive in effect and validates all the actions and conduct of the government so recognized from the commencement of its existence." (*Oetjen* v. *Central Leather Co., supra,* pp. 302–303.)

This case, while at one phase resembling in certain aspects the *Navemar* case (*supra*), may now be distinguished from it. In that case the Department of State refused to act and referred the Spanish Ambassador to the courts. The verified suggestion of the Ambassador was tendered in support of an application to appear as claimant. And in *Mexico* v. *Hoffman* (324 U. S. 30) the court merely refused to enlarge the immunity to an extent which our Government had not seen fit to recognize. The claim of the Mexican Government was recognized but was not allowed. Both cases discuss the effect of a suggestion of immunity.

In this case admittedly the securities to which the Czech Government claims title through the Zivnostenska Bank are not in its possession. However, it must be assumed that all relevant factors were considered and weighed by our Department of State before it recognized and allowed the immunity. Having done so, it becomes the duty of the courts to accept such recognition and allowance as the rule for their decision. (See *Ricaud* v. *American Metal Co.*, 246 U. S. 304; 30 Am. Jur., International Law, §§ 48–50; see, also, *Rich* v. *Naviera Vacuba*, 197 F. Supp. 710, affd. 295 F. 2d 24.)

Rabin, J. P., Eager and Steuer, JJ., concur with McNally, J.; Stevens, J., dissents in part in opinion.

Orders entered on April 13, 1960 and March 16, 1961 affirmed, with $20 costs and disbursements to the respondents.