Jacob OLINER, on his own behalf and all persons similarly situated, Plaintiff,

v.

CZECHOSLOVAK SOCIALIST REPUBLIC and Foreign Bondholders Protective Council, Defendants.

No. 87 Civ. 5713 (KTD).

United States District Court, S.D. New York.

June 22, 1989.

Oliner & Oliner, New York City, for plaintiff; S. David Oliner, of counsel.

Dr. Gabriel Brenka, Consular Officer of the Czechoslovak Socialist Republic, Washington, D.C.

MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

This is an action brought against defendant Czechoslovak Socialist Republic (the "CSR"), to recover on bearer bonds issued in the 1920's by the Republic of Czechoslo-

vakia as that sovereign nation existed in 1922. Although no formal motion is pending, defendants have raised jurisdictional questions and I am therefore, *sua sponte*, determining whether or not there is subject matter jurisdiction to hear this matter.

Briefly summarized, the relevant factual background is as follows. The Republic of Czechoslovakia and it agents issued thirty-year dollar-denominated bonds in 1922 and 1924 that were to be payable in New York. The thirty-year interval between the issuance of the bonds and their maturity date saw enormous changes in the world, including the transformation of the Republic of Czechoslovakia into the CSR.

The CSR apparently at first disclaimed any liability for the various series of bonds issued by its predecessor governments. The United States Government, however, entered into negotiations to bring about some payment for the paper. These negotiations resulted in the Agreement between the Government of the United States of America and the Government of the Czechoslovak Socialist Republic on the Settlement of Certain Outstanding Claims and Financial Issues, Jan. 29, 1982, entered into force, Feb. 2, 1982, 21 I.L.M. 371 (the "Claims Agreement").[1] The American and Czechoslovak Ambassadors then exchanged letters affirming that the CSR would begin negotiations on defaulted Czechoslovak dollar bonds with representatives of American bondholders. Letter from Jack F. Matlock, U.S. Ambassador, to Bohuslav Chnoupek, Federal Minister of Foreign Affairs, Prague (Feb. 2, 1982), *reprinted in* 21 I.L.M. 371.

Pursuant to the Claims Agreement, on November 26, 1986, the CSR agreed with defendant Foreign Bondholders Protective Council, Inc. ("FBPC"), a non-profit organization that acts on behalf of American holders of defaulted foreign state obligations, to purchase bearer bonds designated as "Augstein Bonds" for the equivalent of twenty percent of their nominal value. That purchase offer was based on the assertion that those bonds had already been purchased by the Republic after World War II.

Plaintiff Jacob Oliner holds "Augstein Bonds" that were issued in 1920 and 1924. He now seeks to bring this claims action against the CSR and FBPC on behalf of himself and all other holders of "Augstein Bonds" to challenge the twenty-percent purchase offer by CSR as inadequate. In support of his claim he alleges that FBPC negotiated with the CSR on the false assumption that the "Augstein Bonds" had been repurchased by the CSR in the New York market, and as such accepted a much lesser sum than had been offered to holders of other Czechoslovak state obligations.

The bonds at issue were sold to Oliner and members of the proposed class by the permanent receiver of Zivnostenska Banka, a nationalized Czechoslovakian bank, by order of a New York State court. *See Stephen v. Zivnostenska Bank*, 23 Misc.2d 855, 199 N.Y.S.2d 797 (N.Y.Sup.Ct.N.Y.Cty. 1960), *aff'd*, 15 A.D.2d 111, 222 N.Y.S.2d 128 (1st Dep't 1961), *aff'd*, 12 N.Y.2d 781, 186 N.E.2d 676, 235 N.Y.S.2d 1 (1962). Oliner holds debt instruments as follows: Czechoslovak State Loans of 1922 totalling $3,000 due April 1, 1951, and City of Carlsbad Municipal External Loans of 1924 totalling $7,000 due January 1, 1954.

The CSR failed to file an answer to the complaint and Oliner moved for an order directing the entry of a default judgment. The consul of the CSR answered the motion for default judgment in a letter to the court. That letter, by a copy of a Diplomatic Note filed by the Czechoslovak Federal Ministry of Foreign Affairs with the United States Embassy in Prague (No. 149.158/87 Nov. 25, 1987), raised the defense of sovereign immunity under the For-

---

**1.** United States legislation implementing the Claims Agreement appears as the Czechoslovakian Claims Settlement Act of 1981, Pub.L. No. 97–127, 95 Stat. 1675 (1982). The United States Foreign Claims Settlement Commission issued a notice of time for filing of claims by U.S. nationals against the CSR and for completion of the program on February 18, 1982, as required by § 7 of that Act. 47 Fed.Reg. 8092 (1982). The U.S. Department of the Treasury, Office of Foreign Assets Control, then issued regulations unblocking Czechoslovak assets, effective March 19, 1982. 47 Fed.Reg. 12338–39 (1982).

eign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611 (1986). FBPC answered the complaint and asserts that FBPC negotiations with the CSR are not binding on Oliner, who is free to accept or refuse the offer of settlement made by the CSR. FBPC also raises the affirmative defense that in the event the CSR is granted sovereign immunity, the action should not proceed as against FBPC. I directed Oliner to respond to the assertion of the sovereign immunity defense.

The FSIA, by specifying exceptions to sovereign immunity, now provides the sole basis for federal court subject matter jurisdiction over suits against foreign nations. 28 U.S.C. § 1604; *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Oliner relies on § 1605(a)(2) of the FSIA, which provides that a foreign state is not immune in any case "in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." The CSR argues that neither one of the six exceptions to immunity provided under § 1605 of the FSIA is applicable.

The primary issue that determines jurisdiction of this court involves whether or not the statutorily implied waiver of immunity applies to commercial activity that occurred before the passage of the FSIA in 1976. It is unclear for what purpose these bonds were issued, and thus whether a waiver under the commercial activity exception is appropriate at all.

In any event, the bonds were issued well before an exception for commercial activities was recognized by the United States or under international law generally. Indeed, the Court of Appeals for the Second Circuit has held that the FSIA is inapplicable to claims arising before the United States State Department issued the "Tate Letter" in 1952, adopting the "restrictive theory of sovereign immunity" that excluded nonpublic and commercial activities. *Carl Marks & Co. v. USSR,* 841 F.2d 26, 27 (2d Cir.

1988). Because the operative events at issue occurred before 1952, neither the FSIA nor the "Tate Letter" applies retroactively to confer jurisdiction over this action. No separable cause of action is alleged as to FBPC and the action must also be dismissed as to it.

For the foregoing reasons, this court is without subject matter jurisdiction to hear this action. The arguments raised regarding service of the complaint and the *pro se* appearance by the CSR are therefore moot. The complaint is dismissed.

SO ORDERED.